## MUNCIE PULP COMPANY *v.* HACKER.

[No. 5,214.     Filed January 25, 1906.]

1. PLEADING.—*Complaint.*—*Master and Servant.*—*Factory Act.* —A complaint showing that defendant operated an emery-wheel without any exhaust-fans or other means of protection, and that plaintiff, while working thereon under defendant's orders, was injured thereby, while in the exercise of due care, states a cause of action under the factory act (§7087i Burns 1901, Acts 1899, p. 231, §9).   p. 203.

2. SAME.—*Complaint.*—*Factory Act.*—*Practicability of Guarding Machinery.*—A complaint declaring upon a breach of the provisions of the factory act (§7087i Burns 1901, Acts 1899, p. 231, §9) which alleges that the emery-wheel, in the use of which the injury occurred, was not provided with an exhaust-fan, that it was dangerous and that it was practical to operate it with exhaust-fans, is sufficient regardless of whether the impracticability of guards is a matter of defense as indicated in *Monteith* v. *Kokomo, etc., Co.*, 159 Ind. 149, or whether practicability is a matter to be affirmed by plaintiff in his complaint as indicated in *Laporte Carriage Co.* v. *Sullender*, 165 Ind. 290.   p. 204.

3. SAME. — *Complaint.* — *Factory Act.*—*Knowledge.*—*Effect.*—A complaint for damages for injuries caused by defendant's violation of the factory act (§7087i Burns 1901, Acts 1899, p. 231, §9) does not need to negative plaintiff's knowledge of the defect.   p. 204.

4. STATUTES. — *Factory Act.* — *Exhaust-Fans.*—*Dust.*—*Question for Jury.*—Where the statute (§7087i Burns 1901, Acts 1899, p. 231, §9) requires employers to provide emery-wheels with exhaust-fans to carry away the "dust," the court can not, as a matter of law, say that "dust" does not include particles of emery or metal large enough to injure the eye, such question being for the jury.   p. 205.

5. TRIAL.—*Instructions.*—*Factory Act.*—*Including Alleged Negligent Acts Conjunctively.*—An instruction in·an action for damages on account of defendant's violation of the factory act (§7087i Burns 1901, Acts 1899, p. 231, §9) stating that if the jury find that defendant failed properly to guard an emery-wheel, and failed to provide exhaust-fans, and failed to provide any shield or protection for the eyes, such failure would be negligence, is erroneous in requiring plaintiff to prove three acts of negligence, one only being necessary; but defendant can not complain thereof.   p. 206.

6. TRIAL.—*Negligence.—Several Acts Alleged.—Proof of One.*— Where several negligent acts are alleged, proof of one is sufficient to establish the case.  p. 207.

7. SAME. — *Inapplicable Instructions.—Effect.*—An instruction, though erroneous, stating a general proposition of law inapplicable to the case, where the court does not apply it to the facts of the case, is harmless.  p. 208.

8. SAME. — *Instructions. — Negligence. — Shortening Life. — Damages.*—An instruction that the jury may consider the shortening of plaintiff's life by reason of the alleged negligence for the purpose of determining the extent of his injuries, the consequent disability to make a living, and the mental and bodily suffering which may result, but not to grant damages therefor, is not erroneous.  p. 208.

9. DAMAGES.—*Prospective Pain.—Negligence.*—Plaintiff is entitled to recover for pain and suffering reasonably certain to result from his injuries received by reason of defendant's negligence.  p. 208.

10. TRIAL.—*Instructions.—Answers to Interrogatories.—Negligence.*—Where defendant requested an instruction that if there were two ways to do a thing, one safe, the other dangerous, and plaintiff chose the dangerous way, he was negligent and can not recover, which instruction was refused, the jury's answer to an interrogatory, upon conflicting evidence, that the way followed by plaintiff was the right way to do the work, renders such refusal harmless.  p. 209.

11. SAME.—*Instructions.—Answers to Interrogatories.*—Where the answers to the interrogatories to the jury show that appellant was not injured by the giving or refusal of instructions, the judgment will not be reversed, though the court's rulings were erroneous.  p. 209.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by Edmond H. Hacker against the Muncie Pulp Company. From a judgment on a verdict for plaintiff for $3,000, defendant appeals. *Affirmed.*

*Thompson & Thompson,* for appellant.

*George H. Koons* and *H. F. Wilkie,* for appellee.

ROBINSON, J.—Appeal from a judgment for damages for personal injury. Appellant assigns as errors: (a) Overruling the demurrer to the complaint; (b) overruling

the motion for judgment on answers to interrogatories; and (c) overruling the motion for a new trial.

The complaint avers, in substance, that appellant is a corporation manufacturing pulp and paper, having large and extensive buildings and machinery, and on November 10, 1902, employed appellee to operate and run an engine in its factory; that John O'Day was appellant's master mechanic, whose orders and directions appellee, as an employe of appellant in its service, was bound to conform to and obey; that appellee was employed to work for appellant by O'Day, and was put to work under and subject to his directions at setting valves in the engines, which work occupied about ten days; that thereafter appellant's general superintendent ordered O'Day to put the employes, including appellee, to work at changing some pumps in the factory; which work occupied several days; that thereupon O'Day, under appellant's orders, took the employes back to the engineroom, where they continued to work under O'Day's directions until between December 25, 1902, and January 1, 1903, at which time appellee was put to work for a short time laying a pipe-line on appellant's factory grounds, after which he was put to work under O'Day's directions in the machine-shop, where he worked, until injured, at different and more hazardous work, and where he was required to work at an emery-wheel, which was unguarded and without exhaust-fans, of which hazards and dangers appellee was ignorant; that there was in the machine-shop, as a part of the machinery, a mandril, with an emery-wheel on each end, which wheels were used for sharpening tools and grinding off the rough edges of pieces of iron, and which, when in use, made from eight hundred to one thousand revolutions per minute; that appellant had for more than a year "negligently and carelessly failed, neglected and omitted properly to guard, or to guard at all, said certain machinery and emery-wheels, or either or any of them, or to cause the same or any of them to be

properly guarded, or to be guarded at all by any hood, shield, protection or device of any kind or description, or in any manner whatever, or to provide any device or protection for shielding or protecting the face and eyes of its employes working at and required to work at said emery-wheels," and had "carelessly and negligently failed, neglected and omitted to provide exhaust-fans of sufficient power, or any exhaust-fans at all, or device of any kind for the purpose of carrying off dust and sparks and particles from its said emery-wheels in and from its said manufacturing establishment where the same were being used;" that the emery-wheels in operation when unguarded, were dangerous to persons working at them and to persons doing such work as was required by appellant of its employes, which was well known to appellant, and that such wheels when operated without any hood or protection of any kind to prevent particles of dust and iron and steel from being thrown off and against persons working at them, and without any exhaust-fans or other device to carry off dust and particles set free from their operation, were dangerous, which facts were well known to appellant, but were not known to appellee; that he had no warning thereof from appellant, and appellant, well knowing the facts, gave him no notice or warning; that these wheels were about twelve inches in diameter and the width of the rim was about two and one-half inches; that they could have been easily and effectually guarded by a metal hood or shield attached to the frame on which the mandril worked, and carried around over the wheels towards the position in which the persons working at them would properly stand, sufficient to arrest the sparks and particles and dust that would otherwise be carried around with the swift revolutions of the wheels, and fly off at a tangent against persons working at them, or could have been otherwise guarded by properly constructed devices, which appellant, its superintendent and agents knew; that appellant owed to its employes, requir-

ed to work at such wheels, the duty properly to guard the same and prevent the danger from them unguarded, which duty appellant well knew, but neglected to perform; that the failure, neglect and omission properly to guard the wheels and to provide exhaust-fans or other sufficient device to carry off dust and particles from the wheels, and the consequent unguarded condition of the wheels, constituted a defect in the ways, works, plant, tools and machinery in use by appellant, which was the result of such negligence on the part of appellant and of the persons entrusted by it to keep the ways, works and machinery in proper condition; that on January 1, 1903, appellee, as such employe, while working in the machine-shop, under and subject to the orders of O'Day, was ordered and directed by O'Day to take a piece of iron with rough edges and square corners to an emery-wheel and grind off and smooth the ends, which order appellee was bound to conform to and obey and did conform to and obey, and while in the act of grinding off the ends and corners thereof, and in the exercise of due diligence on his part, small particles or pieces of steel or iron or some material were thrown from the wheel, striking appellee in the eye, and causing pain, suffering, sickness and the final loss of the eye, "all of which was wholly caused by the negligence of the defendant aforesaid and without any want of care and diligence on his part;" that if there had been at such time and place a proper hood, shield or proper guard over the wheel to prevent particles from being thrown from the wheel against a person working at it, and the same had been properly provided with exhaust-fans or other device to carry off dust particles, such injury would not and could not have occurred to appellee; that it was practical to operate such emery-wheels with such properly constructed hood, shield or other proper guard, device or protection, and to provide the same with proper exhaust-fans and other devices to carry off dust and particles set free by the operation of the wheels, so that such injury

could have been prevented, all of which appellant and its agents in charge of its factory well knew, but carelessly and negligently failed and omitted to do or cause to be done, whereby and by reason whereof appellee received and suffered such injury while in the exercise of due care and diligence and without any fault or negligence on his part.

In answering two sets of interrogatories the jury found substantially the following facts: Appellant employed appellee in November, 1902. O'Day was appellant's master mechanic, and appellee was bound to conform to and obey his orders. O'Day employed appellee as an engineer, and first put him to work setting the valves in the engine, which work occupied about ten days, and thereafter O'Day put appellee to work at changing the location of some pumps, which work occupied several days. Afterward O'Day had appellee working in the engine-room until between the latter part of December, 1902, and January 1, 1903. He worked a short time laying a pipe-line on the factory premises, and was then put to work by O'Day in the machine-shop, where he worked until injured on January 1, 1903. He was required to work at emery-wheels which were unguarded and were not provided with exhaust-fans, which work was attended with greater hazards and dangers to appellee's eyes than the work of running an engine, which he had been employed to do. Appellee was wholly inexperienced in working at emery-wheels prior to the time he was put to work by appellant in its machine-shop, and did not know the danger of doing work at the emery-wheels, and was not warned by appellant or any one of the danger from particles of iron or steel or emery set free from the wheels. The wheels were not protected by hoods or devices of any kind, nor with exhaust-fans or devices to carry off dust and particles. It was practicable to guard the wheels without interfering with their operation or usefulness, and no device or protection of any kind was fur-

nished to shield or protect the eyes of employes operating the emery-wheels. Ordinary care and prudence required appellant to furnish employes working at the emery-wheels eyeglasses set in closely-woven network, shaped so as to fit over the eyes close up to the face, or some other sufficient device or protection to shield the eyes while at work at the wheels. It was practicable for appellant to provide for the use of its employes some sufficient, proper device or protection to shield or protect the eyes of employes required to work at the emery-wheels, and it was practicable to furnish eyeglasses made as above stated. The wheels unguarded were dangerous to the eyes of employes operating them, but appellee did not realize the danger, and was not warned by appellant. O'Day was master mechanic, and had charge of the employes who were subject to his orders and were bound to obey and conform to such orders. On January 1, 1903, O'Day ordered appellee to take a piece of iron to an emery-wheel and grind off the ends, which order appellee was bound to conform to and obey, and which he did obey, and was complying with such order and was using due care and diligence when injured. Small pieces of iron or steel or material were thrown from the wheel, striking appellee in the eye, causing the same to inflame, from which injury the eye was destroyed. The injury would not have occurred if the wheel had been properly guarded, or had been properly provided with an exhaust-fan sufficient to carry off particles of dust and material from the wheel. It was practicable to operate the emery-wheel with a properly constructed hood or shield or other protection, and to provide the same with a proper exhaust-fan or other sufficient device to carry off the dust and particles set free from the operation of the wheel, without materially interfering with its operation and usefulness, so that the injury would have been avoided. The jury further answered that appellee was not a machinist but was a mechanic. John Kennedy was general superin-

tendent of appellant's entire plant during all the time appellee worked there. Appellee had had some experience in repairing machinery before he went to work for appellant. The work carried on in appellant's machine-shop was the building of new machinery and the repairing of old. Appellee worked some part of this time in the black ash room at the factory.' Appellee's eyes had not been weak or sore before he went to work for appellant. He did no work on the "shaper," which required close attention to see the lines. Appellee's eye was injured on January 1, 1903, at 9 o'clock in the morning. He had worked every day from November 10, 1902, until he was hurt. Appellee made no objections when sent to change the valves in the engines, and none when sent to help move some steam pumps. John O'Day, the master mechanic, directed appellee to work in the machine-shop. On the day he was injured he continued to work at the mill until night, and did not have his injured eye bandaged and did not see a doctor. On the evening of his injury appellee had his eye bandaged when at the table. That evening he went to see a doctor about the eye. Next day, January 2, 1903, appellee returned to work at appellant's mill, and worked until 2 o'clock p. m. After appellee's eye was taken out he worked with the machinery at appellant's factory for about three months from February 2, 1903. Appellee worked as an engineer sometime while he was employed by appellant. Before appellee was hurt there were three emery-wheels at appellant's machine-shop, two of them were operated on the same mandril. The wheel at which appellee was hurt was twelve inches thick and two inches in diameter, was used for grinding iron and steel, and was operated by steam. The emery-wheel at which appellee was hurt was composed of coarse emery. When hurt appellee was grinding a piece of iron seven inches long, one and one-fourth inches wide and five-eighths of an inch thick. When said emery-wheel was in operation

it revolved toward the person operating the wheel, and when iron was being ground thereon small particles of iron and dust were thrown off the wheel in the direction of the person operating it. These particles were not thrown to the side of the wheel. A person could not stand at the side and operate it. When appellee was hurt the emery-wheel at which he was operating was making 1,000 revolutions per minute, which was an ordinary and safe rate of speed for an emery-wheel of that size. Prior to his injury appellant had ground iron at the emery-wheel where he was injured four or five times, for five or ten minutes at a time. At these times sparks, dust and fine particles flew off the wheel, but appellee did not know there was any danger of his eyes being injured by them. On January 1, 1903, appellant, Muncie Pulp Company, was a manufacturing corporation. Said emery-wheel was out of repair in not being properly guarded. John O'Day directed appellee to grind the iron. No other person had anything to do with directing him to do this work. John O'Day was subject to the orders of John Kennedy; general superintendent, and said Kennedy did not directly order appellee to grind this piece of iron that he was grinding when injured. Appellee had been working at the emery-wheel twenty minutes on the day of his injury. Appellee had started to round off the corners of this piece of iron with a file, and was directed by O'Day to round off the corners on the emery-wheel. After appellee's eye was taken out he worked for appellant in and around the machine-shop for three months, and ran and operated some sort of machines, and received the same wages then as before he was hurt. The doctor who first examined appellee's eye found three small particles in it. The particle imbedded deepest in appellee's eye was emery. Appellee's eye could not have been saved by proper treatment. Appellee's eye did not become ulcerated by reason of some infectious disease, but it did become ulcerated, and said ulceration was due to infec-

tion caused by microbes in the wound or injury in the eye. The taking out of appellee's eye was rendered necessary by the infection of the wound. Before his eye was hurt appellee received $70 a month from appellant, and since said time he has operated an engine in the oil fields for $60 per month. When the emery-wheel at which appellee was injured was being used to grind large pieces of iron, the sparks flying off from said wheel could be seen from nearly any place in the machine-shop. Since receiving his injury appellee has also worked for Kirby & Hutzel. When large pieces of iron were being ground on the wheel at which plaintiff says he was hurt a rim of sparks followed around the wheel. The ulceration of the wound in appellee's eye, due to infection, necessitated the removal of his eye. In grinding iron on the emery-wheel the particles of iron thrown off in the grinding process are red hot when thrown off. The jury allowed appellee $146.75 for medical services, and $178.75 for other expenses connected with the removal and treatment of his eye. They allowed him nothing for the probable shortening of his life by reason of such injury.

It is difficult to tell by the complaint upon what theory the pleader was intending to proceed, nor is it, from the answers given to interrogatories, entirely plain

1. upon what theory the case was submitted to the jury. But we think the complaint states a cause of action under the factory act. That statute (§7087i Burns 1901, Acts 1899, p. 231, §9) provides: "All vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws and machinery of every description therein shall be properly guarded. * * * Exhaust-fans of sufficient power shall be provided for the purpose of carrying off dust from emery-wheels and grindstones, and dust-creating machinery from establishments where used."

In *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944, a complaint based upon the clause of this

act first-above quoted was held to state a cause of action, although the pleading contains no averment that it was possible or practicable properly to guard the saw without rendering it useless for the purpose intended. But in the later case of *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290, a paragraph of complaint was held insufficient for the reason, among others, that it omitted an averment of this fact; the case holding that whether the thing required by the statute to be guarded could be so guarded was not a matter of defense.

But in the case at bar it is sufficiently shown by the pleading that no exhaust-fans were provided for the emery-wheels, that without the exhaust-fans they were dangerous, and that it was practical to operate the emery-wheels with proper exhaust-fans. This clause of the above section was not under consideration in either *Monteith* v. *Kokomo, etc., Co., supra,* or *Laporte Carriage Co.* v. *Sullender, supra;* and it would seem to be sufficient to aver that the emery-wheel was not provided with any exhaust-fan for carrying off dust therefrom. The effect of the statute is to impress upon an emery-wheel in use in a factory a characteristic of danger, and to forbid its use unless provided with an exhaust-fan. The statute imposes a specific obligation with reference to a specific thing, and the failure to comply with the requirements of the statute is a plain breach of a statutory duty owing to the employe. But, if the doctrine of the case of *Laporte Carriage Co.* v. *Sullender, supra,* is applied to this particular clause of the statute, the pleading sufficiently avers that the emery-wheel could have been provided with an exhaust-fan without rendering it useless for the purposes intended.

It is also argued that as appellee was bound to know that there was no exhaust-fan, and from his age and experience was bound to know that iron ground on a rapidly revolving emery-wheel would throw off sparks and particles, the general averment of his want of knowl-

edge is overcome by special averments from which it is evident he must have known such fact. The following language in the opinion in *Monteith* v. *Kokomo, etc., Co., supra,* is applicable and controlling on this question: "In the present case, the risk existed at the time the appellant entered the employment. Whatever it was, whether great or slight, obvious or otherwise, it resulted from the failure of the employer properly to guard the saw. But we can not say, as a matter of law, that the use of the saw without a guard appeared to the appellant to be necessarily dangerous. The position of the saw, and the manner in which it was to be used, may have seemed reasonably safe. There is nothing in the complaint to show that the appellant had any cause to think the saw dangerous. The complaint does not allege that the appellant had no knowledge of the fact that the saw was not guarded, or that he did not see and comprehend such danger as arose from its condition. And in an action upon section nine of this statute, this averment was not necessary." See, also, *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413.

Upon the motion for judgment on the answers to interrogatories it is argued that the answers show that it was not dust from the emery-wheel that caused the injury, but that the injury was caused by pieces of iron or steel or material thrown off from the wheel, while the statute requires fans to carry away dust, and that therefore the injury was not occasioned by the absence of fans. As it might be difficult, if not impossible, to tell how small a piece of metal should be before it would properly be called dust, we could not say as matter of law that the fans required by statute were not intended to carry away any particles of metal, resulting from the use of the wheels, large enough to cause injury if they should strike the eye.

Upon the motion for a new trial complaint is first made of the fourth instruction, which reads as follows: "If the

jury believe from the evidence that the plaintiff received his alleged injury, while in the employ and service of the defendant in the manner alleged in the complaint, on January 1, 1903, while rounding off the rough edges of a piece of iron or steel on the defendant's emery-wheel, operated in the defendant's machine-shop of its manufacturing establishment, in obedience to the order or direction of the defendant's master mechanic, under whose orders and directions plaintiff was then and there working for the defendant, and who had then and there authority from the defendant to order and direct him, and that the defendant then and there failed, neglected and omitted properly to guard its said emery-wheel, or cause the same to be properly guarded by any hood, shield, protection or device, or guard of any kind, and failed, neglected and omitted to provide any device or protection for shielding or protecting the eyes of its employes and servants working at and required to work at said emery-wheel, and failed, neglected and omitted to provide any exhaust-fan or other device to carry off the dust and particles set free from the operation of said emery-wheel, as alleged in the complaint, and that it was then and there practicable properly to guard said emery-wheel and provide the same with an exhaust-fan or other device to carry off the dust and particles set free from the operation of such emery-wheel, and that said emery-wheel was part of the machinery in the defendant's said manufacturing establishment, then and there operated and used therein as alleged in the complaint, such failure, neglect and omission on the part of the defendant would be negligence, and the plaintiff would not assume the risk arising from such negligence; and if the same approximately resulted in and caused the injury to plaintiff's eye, as alleged in the complaint, the plaintiff is entitled to recover, and your verdict should be for the plaintiff, unless you should find that it has been proved by a fair preponderance of the evidence

that the plaintiff was guilty of contributory negligence on his part which contributed to cause his said injury."

Appellee, in his complaint, alleged, among other acts of negligence, that appellant had failed properly to guard its emery-wheels, and that it had failed to provide any protection for the eyes of employes who were required to operate the wheels, and that it had failed to provide exhaust-fans. If the above instruction required appellee to establish by evidence more than was necessary to make a case of negligence, an objection to the instruction on that ground could avail appellant nothing. That is, if it was a case where exhaust-fans should have been provided, and they were not, it was unnecessary to show negligence in any other respect. The instruction does not tell the jury that if appellant failed properly to guard the wheels, or failed to provide exhaust-fans, or failed to provide any shield or protection for the eyes of employes, that such failure would be negligence; but the instruction states that, if appellant failed in all three of the particulars named, it was guilty of negligence.

It is unnecessary, for the purpose of this instruction, to inquire whether the emery-wheel, described as it is in the complaint, with its uses and the dangers incident to its operation, is a machine within the meaning of that clause requiring machinery to be guarded properly, for the reason that the statute does require that emery-wheels shall be provided with exhaust-fans. And if it is necessary that the injured party should aver and prove that it was practicable to provide exhaust-fans, the complaint avers that fact, and the above instruction requires that it be proved. If the complaint states a cause of action for negligence in failing to provide exhaust-fans, the fact that it pleads, if it does so plead in fact, other separate and entirely distinct acts of negligence, did not make the pleading bad. And if the instruction requires not only that this act of negligence be proved but also that

such other separate and distinct acts shall be proved, the error, if any, is one of which appellant can not complain.

An instruction which is a statement of a general proposition, and is applicable only to a different theory from that upon which the case proceeded, should not be given; 7. but, where there was no attempt in the instruction itself to apply it to the facts of the case, the giving of such an instruction would not necessarily be reversible error.

Objection is made to the following instruction: "If you find for the plaintiff and award him damages, in fixing the amount of the same, you can not allow him 8. anything for loss or shortening of life itself; but, if you believe from the evidence that shortening of life may be the result of the injury, this may be considered in determining the extent of the injury only, and the consequent disability to make a living and the mental and bodily suffering which may result." If this instruction authorized damages for the shortening of life, it was erroneous. *Richmond Gas Co.* v. *Baker* (1897), 146 Ind. 600, 36 L. R. A. 683. But in that case the doctrine seems to be approved that if the condition of the injured person is such that a shortening of life may be apprehended, this may be considered in determining the extent of the injury. The instruction under consideration is thus limited, and manifestly did not mislead the jury, as in an answer to an interrogatory the jury state that they allow appellee nothing for the reason that they believe the injury for which he sues will shorten his life.

In another instruction the jury were told that in estimating appellee's damages they might consider, among other things, "his pain and suffering already endured, and that may be endured, from and by 9. reason of his injury, in the future, if any." The general rule is that if damages are allowed for the pain and suffering which a party may hereafter endure, it must

be such as is reasonably certain to result from the injury. The use of the word "may" is not altogether correct, but we are not prepared to say that the instruction as given necessarily permitted the jury to go into the field of probability or speculation. There was some evidence from which the jury could conclude that it was reasonably certain that pain and suffering would result from the injury.

Upon the court's refusal to give certain instructions requested, it is stated in argument that if there are two ways of doing a thing, one of which is dangerous and the other safe, and a person acts upon his own volition and chooses the dangerous way, he is negligent, and can not recover. The evidence is not without conflict as to what would be the proper position for a person to occupy while operating the wheel, but there is evidence authorizing the jury's answer to an interrogatory that a person could not stand at the side of the wheel and operate it in doing the work appellee was doing when injured.

Complaint is made of other instructions given and of the court's refusal to give certain other instructions requested. But the answers of the jury to the interrogatories show that appellant was not harmed by the giving or the refusing to give such instructions. Under such circumstances, although an erroneous instruction was given and a correct instruction refused, the error would not be ground for reversal. *Cleveland, etc., R. Co.* v. *Newell* (1885), 104 Ind. 264, 54 Am. Rep. 312; *Ricketts* v. *Harvey* (1886), 106 Ind. 564; *Cline* v. *Lindsey* (1887), 110 Ind. 337; *Roush* v. *Roush* (1900), 154 Ind. 562; *Ellis* v. *City of Hammond* (1901), 157 Ind. 267. Taking into consideration the answer of the jury to interrogatories it can not be said that the substantial rights of appellant were prejudiced by the giving of any instruction of which complaint is made. In *Shields* v. *State* (1897), 149 Ind. 395, 406, the court said: "It is settled

law in this State that instructions are considered with reference to each other, and as an entirety, and not separately or in dissected parts; and if the instructions as a whole correctly and fairly present the law to the jury, even if some particular instruction, or some portion of an instruction, standing alone or taken abstractly, and not explained or qualified by others, may be erroneous, it will afford no grounds for reversal. * * * Mere verbal inaccuracies in instructions, or technical errors in the statement of abstract propositions of law, furnish no grounds for reversal, when they result in no substantial harm to the defendant, if the instructions, taken together, correctly state the law applicable to the facts of the case. * * * Nor is the giving of an erroneous instruction reversible error when it appears that the substantial rights of the defendant were not prejudiced thereby. * * * The foregoing rules apply to criminal as well as civil cases."

Applying the foregoing rules to the case at bar it can not be said that any reversible error was committed by the trial court in the instructions to the jury.

Judgment affirmed.