# INDIANAPOLIS FOUNDRY COMPANY *v.* LACKEY.

[No. 7,463. Filed January 31, 1912. Rehearing denied April 26, 1912. Transfer denied July 5, 1912.]

1. MASTER AND SERVANT.—*Factory Act.—Emery-Wheels.—Exhaust-Fans.—Dust.*—The word "dust" as used in the factory act (§8029 Burns 1908, Acts 1899 p. 231) requiring that exhaust-fans of sufficient power shall be provided for the purpose of carrying off dust from emery-wheels and grindstones and dust-creating machinery, includes particles of iron and crystals created and thrown from an emery-wheel while in operation. p. 177.

2. MASTER AND SERVANT.—*Injury to Servant.—Emery-Wheels.—Exhaust-Fans.—Complaint.—Allegations.—Proof.*—In an action by a servant for injury, based on the master's failure to provide an emery-wheel with an exhaust-fan as required by §8029 Burns 1908, Acts 1899 p. 231, the plaintiff must allege and prove that the emery-wheel could have been provided with an exhaust-fan without rendering it useless for the purposes intended. p. 178.

3. APPEAL.—*Review.—Invited Error.—Instructions.*—In an action by a servant for injury based on the master's failure to comply

with §8029 Burns 1908, Acts 1899 p. 231, requiring emery-wheels to be provided with exhaust-fans, where it was not contended that such fan could not have been installed, but the sole theory of the defense was that one could not have been installed that would have carried away all the dust or that would have prevented the injury, defendant cannot take advantage of the failure of an instruction purporting to enumerate the facts essential to recovery by the plaintiff to include the element of the practicability of installing such fan, since the error was invited by the theory of its defense. p. 180.

4. APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—In an action by a servant for injuries, based on the master's failure to provide an emery-wheel with an exhaust-fan, as required by §8029 Burns 1908, Acts 1899 p. 231, the failure of an instruction, purporting to enumerate the facts essential to recovery by the plaintiff, to include the element of the practicability of installing such fan, was harmless, where the defense did not contend that it was impracticable to install same, but that the installation thereof would not have prevented the injury. p. 184.

5. MASTER AND SERVANT.—*Assumption of Risk.*—*Factory Act.*—A servant does not assume the risk resulting from the master's failure to guard a machine or equip it with attachments as required by the factory act, §8029 Burns 1908, Acts 1899 p. 231. p. 185.

6. APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—Where the subject of an instruction, in a servant's action against the master for injuries resulting from the master's failure to provide an emery-wheel with an exhaust-fan, as required by §8029 Burns 1908, Acts 1899 p. 231, was clearly limited to the question of the servant's assumption of the risk in such cases, the fact that it included the words "machinery required to be guarded" could not have misled the jury. p. 185.

7. APPEAL.—*Review.*—*Evidence.*—*Verdict.*—A verdict for plaintiff will not be disturbed on ground of insufficiency of the evidence where there was some evidence to support every material allegation of the complaint. p. 186.

8. APPEAL.—*Review.*—*Verdict.*—*Damages.*—The verdict of the jury will not be disturbed on the ground that the damages are excessive, except in extreme cases. p. 186.

From Superior Court of Marion County (75,702); *Clarence E. Weir,* Judge.

Action by Charles F. Lackey against the Indianapolis Foundry Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Charles O. Roemler, H. O. Chamberlin* and *E. E. Stevenson,* for appellant.

*Elliott & Elliott* and *George W. Galvin,* for appellees.

HOTTEL, J.—This was a suit brought by appellee to recover damages for personal injuries alleged to have been caused by reason of appellant's failure to guard and provide an exhaust-fan on a certain emery-wheel in its foundry. The cause was tried by a jury which returned a verdict for appellee in the sum of $1,000. A motion for a new trial was overruled and an appeal taken, the errors assigned being as follows: (1) That the court erred in overruling appellant's demurrer to the complaint; (2) that the court erred in overruling appellant's motion for a new trial. We deem it unnecessary to set out in this opinion the complaint, or any of its averments, as the only objection urged against it presents a question which has been by this court expressly decided adverse to appellant's contention.

Appellant contends that the term "dust", as used in the factory act (Acts 1899 p. 231, §8029 Burns 1908), does not include "particles of iron and crystals", and that on 1. this account this complaint is insufficient, because the ground for relief sought therein is predicated on a failure to comply with certain statutory requirements, and the complaint at the same time shows the alleged injuries to have arisen from conditions neither embraced within nor contemplated by the statute. This court has held that it would have been improper for a court to instruct a jury that the term "dust" did not include particles of iron and emery. *Muncie Pulp Co.* v. *Hacker* (1906), 37 Ind. App. 194, 205, 76 N. E. 740; *Indianapolis Foundry Co.* v. *Bradley* (1910), 45 Ind. App. 530, 534, 89 N. E. 505. In the latter case, the court, in construing the provision of the act in question here, said at page 533: "One purpose of the statute is to reduce the hazards incident to the operation of emery-wheels. It re-

quires that exhaust-fans of sufficient power shall be provided for the purpose of carrying off dust from 'emery-wheels and grindstones and dust-creating machines'. Appellee testified that the dust thrown off the wheel in question was 'emery and iron'. We think the legislature failed in its purpose if the statute did not apply to the particles of created matter thrown from the wheels while in operation, as well as any dust likely to be present in rooms in which dust-creating machines are operated.''

In *Muncie Pulp Co.* v. *Hacker, supra,* the allegation in the complaint was similar to the one here considered, and the court held the complaint good under the factory act.

In its motion for a new trial appellant set forth thirty-one grounds, but has specifically waived all but the following: (1) That the court erred in refusing to give to the jury instructions two, three, four, five, six and seven asked for by appellant; (2) that the court erred in giving, on its own motion, instructions numbered four, six, nine and ten; (3) that the verdict is not sustained by sufficient evidence; (4) that the verdict is contrary to law; (5) that the damages assessed by the jury are excessive. The alleged error presented by the refused instructions, *supra,* is next urged by appellant.

Instruction two, tendered by appellant and refused, was in every essential feature an exact copy of instruction six which this court in the case of *Indianapolis Foundry Co.* v. *Bradley* (1910), 45 Ind. App. 530, 534, 89 N. E. 505, held to have been properly refused. We need not discuss the other instructions refused, because in so far as they are not covered by those given by the court, the same questions are presented by the discussion of instructions four, nine and ten, given by the court on its own motion.

2. The objection to these instructions urged by appellant is, in effect, that each purports to enumerate the facts necessary to be proved by appellee to entitle him to a recovery, and that each omits an element essential to

such recovery, viz: That it was necessary for appellant to "prove that a guard or an exhaust-fan [as the case may be] could have been attached to the machine without interfering with its use."

On this question this court in the case of *Muncie Pulp Co.* v. *Hacker, supra,* said at page 203: "In *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149 [64 N. E. 610], 58 L. R. A. 944, a complaint based upon the clause of this act first-above quoted was held to state a cause of action, although the pleading contains no averment that it was possible or practicable properly to guard the saw without rendering it useless for the purpose intended. But in the later case of *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290 [75 N. E. 270], a paragraph of complaint was held insufficient for the reason among others, that it omitted an averment of this fact; the case holding that whether the thing required by the statute to be guarded could be so guarded was not a matter of defense. But in the case at bar it is sufficiently shown by the pleading that no exhaust-fans were provided for the emery-wheels, that without the exhaust-fans they were dangerous, and that it was practical to operate the emery-wheels with proper exhaust-fans. This clause of the above section was not under consideration in either *Monteith* v. *Kokomo, etc., Co., supra,* or *Laporte Carriage Co.* v. *Sullender, supra;* and it would seem to be sufficient to aver that the emery-wheel was not provided with any exhaust-fan for carrying off dust therefrom. The effect of the statute is to impress upon an emery-wheel in use in a factory a characteristic of danger, and to forbid its use unless provided with an exhaust-fan. The statute imposes a specific obligation with reference to a specific thing, and the failure to comply with the requirements of the statute is a plain breach of a statutory duty owing to the employe. But, if the doctrine of the case of *Laporte Carriage Co.* v. *Sullender, supra,* is applied to this particular clause of the statute, the pleading sufficiently avers

that the emery-wheel could have been provided with an exhaust-fan without rendering it useless for the purposes intended.''

The writer of this opinion agrees with the reasoning and conclusion reached by this court in the case just quoted from on the merits of the question here presented, but the later decisions of this court, on the authority of *Laporte Carriage Co.* v. *Sullender, supra,* have expressly held that it is necessary, under the provision of the statute here involved, to allege and prove that the emery-wheel could have been provided with an exhaust-fan without rendering it useless for the purposes intended. Such is the holding of this court in the case of *National Drill Co.* v. *Myers* (1907), 40 Ind. App. 322, 81 N. E. 1103, and *Indianapolis Foundry Co.* v. *Bradley* (1910), 45 Ind. App. 530, 89 N. E. 505. In the last case the court said: ''To warrant a recovery, the burden was on plaintiff to show * * * that it was practicable to provide said emery-wheel with an exhaust-fan; that plaintiff was injured by dust thrown from said wheel; that his injury was caused in the manner alleged.''

It is manifest that, under these authorities, instructions four and ten, given by the court on its own motion, were erroneous on account of their failure to include therein as one of the elements essential to plaintiff's recovery the element that it was practicable to provide said emery-wheel with an exhaust-fan, and on account thereof, this cause must be reversed, unless it appears from the record that the error was invited, or that appellant was not harmed thereby.

An examination of the record in this case makes clear and fully explains the omission of this element in the instruction, as well as the reason for the court's refusal to give 3. the instructions tendered by appellant, which involved the same question. The record discloses that there was in fact no controversy about appellant's ability to provide an exhaust-fan for such emery-wheel, but appellant's sole contention was that it was impossible to provide one that was

sufficient to carry away all the dust and particles thrown from said wheel while in operation, and that an exhaust-fan, if it had been provided for the emery-wheel in question, "would not have prevented appellee's injury".

On this subject, appellee introduced the chief deputy of the State Bureau of Inspection, who read in evidence the written notice served by said department on appellant, notifying it to comply with the section of statute under which this action is brought; specially mentioning that it should "connect emery-wheels and all dust-creating machinery with exhaust-fans for removal of dust and flying substances from such wheels." This witness described the exhaust-fans which he had observed attached to emery-wheels in other factories, the manner of their connection with the wheel, their action on the dust, and the process of installing the same, and further testified that it was "possible to install a system of that kind in connection with the ordinary emery-wheel used in foundries and machine shops."

All of appellant's witnesses who testified on this subject were either from factories which operated emery-wheels of like character and construction as that involved in this case, and which had exhaust-fans attached, or if such witness was not an employe of such factory he testified to having seen emery-wheels of like kind and construction to that here involved which had the exhaust-fans attached. Appellant's purpose in each instance, as disclosed by the examination of such witnesses, was to show that such exhaust-fans did not and would not carry away *all the dust and particles of emery and iron* that are thrown off from such wheel when in operation. To render its evidence competent and pertinent to this case, appellant had the witness in each instance describe the emery-wheels with which he was familiar, which were such as those used in appellant's factory, and the witness was then asked to tell the effect and result of appellant's operation with such fans, as to their carrying away all the dust. To some of the witnesses, appellant, in a hypothetical question,

described an emery-wheel similar to the one here involved, and then asked if an exhaust-fan could be attached to such an emery-wheel, which would carry away *all the dust and particles, etc.*

Appellant's theory of defense is best disclosed by its own words in its answer to objections made to one of its questions. The question put to the witness by appellant, and the objection made by appellee, together with appellant's response thereto, follow:

''Q. Now then, Mr. Bixby, taking an emery-wheel sixteen inches in diameter attached to a shaft, and that shaft connected by belts and pulleys to the power system, that wheel revolving very rapidly, the workman at the wheel grinding a stove frame say two and a half by two feet which he grinds while standing in front of the machine pressing the stove frame up against the wheel, the wheel having no exhaust-fan or exhaust system attached to it, I will ask you to state to the jury whether an exhaust-fan attached to an emery-wheel operated under such conditions would be of sufficient power to carry away all the dust and particles of emery and iron made by the contact of the stove frame with the emery-wheel?

Mr. Galvin: I object to that, if the court please, that is not the proposition involved in this case. Whether an exhaust-fan will carry off all the particles or not is not a matter we can determine from the Act of the Legislature. This Act provides that all emery-wheels shall be provided with exhaust-fans of sufficient power to carry off the dust created by such emery-wheel. Now as to whether such an exhaust-fan will carry off all these particles is not a question involved in this case. The question here is whether the defendant has supplied any exhaust-fan, and it is admitted that this machine did not have an exhaust-fan. Therefore we are upon this question directly and positively. It is not a question of whether any exhaust-fan will carry off all the

particles from any machine, but what the Legislature had in mind when it passed this law.

Mr. Chamberlin: *The question is merely and solely to bring out that an exhaust-fan would not have prevented this injury. That is our sole defense.* If we are not permitted to show that, we are prevented from making any defense here. We have put this man on the stand as an expert, and I believe the question is competent.''

An examination of the record discloses that it was at no time contended by appellant that it was impracticable to connect exhaust-fans with its emery-wheels, but its *sole theory* was that it was an impossibility to install one of sufficient *power to carry away all the dust and particles of emery and iron thrown from such wheel when in operation,* and that even though an exhaust-fan had been provided for the emery-wheel in question, it would not have prevented appellee's injury.

In order that appellant might get this theory before the jury, and the full benefit thereof, it was, by the court, permitted to show by witnesses who worked in factories using such fans the character of their operation and work, and the results obtained therefrom, to the extent of allowing the introduction before the jury of a sample of the dust removed by such fans in other factories, and a sample of the particles taken from around such wheels, that had not been removed thereby, such samples being brought by the witnesses who testified on such question. On this question appellant's president was permitted to testify that since appellee's injury the appellant has installed the fan system, and he was permitted to describe the conditions and results before and after such installation, and to go into detail in describing the operation of ''these emery-wheels under the two conditions'', and was permitted to ''explain to the jury just what happened when operated without the exhaust-fan and what happened when operated with the exhaust system so

far as throwing off particles of emery and iron from the wheel was concerned.''

In view of the theory of appellant's defense, as disclosed by this record, appellant invited the error, if any, in the giving of instructions four and ten, *supra,* and cannot now be heard to take advantage of the same. Elliott, App. Proc. §627; *Cleveland, etc., R. Co.* v. *Dixon* (1912), *post,* 658, 96 N. E. 815; *Reilly* v. *Hannibal, etc., R. Co.* (1887), 94 Mo. 600, 7 S. W. 407.

It may be said, also, that in view of such theory on which the case was tried by appellant, no harm could possibly have resulted from the giving of such instruction, 4. and under such circumstances the giving of the same does not constitute reversible error.

In these instructions of which complaint is made, the jury was told, among other things, that ''in this case in determining whether or not failure of the defendant to furnish an exhaust-fan, if it did so fail, for the emery-wheel in question was the proximate cause of the injury of the plaintiff, if he was injured, you would have a right to consider whether or not the injury to plaintiff would probably have happened if the defendants had not failed to furnish such exhaust-fan. 10. If you should find from the evidence that plaintiff suffered the injuries complained of or some of them; that such injuries were caused by dust from the emery-wheel in question striking him in the eye, and * * * you should find from the evidence that the failure of the defendant to have installed on the machine in question any exhaust-fan was not the proximate cause of plaintiff's injury, or if you should find that the plaintiff was injured by some substance other than dust striking him at the time in question * * * then in either case, the plaintiff would not be entitled to recover and you should find for the defendant.''

Instructions seven and eight given by the court were as follows:

"(7) The statutes of Indiana require that an employer operating emery-wheels shall provide exhaust-fans of sufficient power for the purpose of carrying off dust from such wheels. It is the claim of the plaintiff that this defendant failed to equip the emery-wheel in question with such exhaust-fan and that because of such failure the plaintiff was injured. In order to enable the plaintiff to recover he must show in addition to the other material facts alleged in his complaint that he was injured by the *dust coming from the emery-wheel in controversy,* and in considering that question the term *'dust' should be considered and construed by you in accord with the ordinary and generally accepted meaning of the term.* (8) There has been some conflict of evidence in this case as to whether or not an exhaust-fan upon the emery-wheel in question would have carried off particles of material of the size which injured the plaintiff's eye. In this connection the court instructs you that at the time in question the law required emery-wheels to be equipped with exhaust-fans of sufficient power to carry away *dust* from the use thereof. *The law did not, however, require exhaust-fans of sufficient power to carry away other materials,* and in this connection it will be necessary for you to determine whether or not the plaintiff was injured by dust from such emery-wheel, or whether he was injured by some other material."

It will be seen from these instructions that the court gave to the jury the law applicable to the real question in this case, under appellant's theory of defense as announced on the trial, as favorable to it as the principles announced in *Indianapolis Foundry Co.* v. *Bradley, supra,* and in *Muncie Pulp Co.* v. *Hacker, supra,* would permit.

5.
6. Instruction six, given by the court, is not open to the objection urged against it. Its only effect is to tell the jury that "if the tool or machine with which the employe is required to work is one which by statute is required to be guarded in a certain way or

*equipped with certain attachments,"* etc., that he does not assume the risk of injury resulting therefrom. This is the law. *Whiteley, etc., Castings Co.* v. *Wishon* (1908), 42 Ind. App. 288, 85 N. E. 832; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 73 N. E. 899.

The court clearly limits the subject of the instruction to the question of assumption of risk in such cases, and the fact that the language of the instruction included "machinery required to be guarded" could not have misled the jury.

On the third ground of the motion for a new trial, it is sufficient to say that there was some evidence tending to support every material allegation of the complaint.

7.

The fourth ground of the motion is not argued by counsel.

The fifth ground, viz., that the damages assessed by the jury are excessive, presents a question on which the verdict of the jury is conclusive, except in extreme cases, and does not, under the evidence in this case and the law applicable thereto, present reversible error. *Illinois Cent. R. Co.* v. *Cheek* (1899), 152 Ind. 663, 53 N. E. 641; *City of Bluffton* v. *McAfee* (1899), 23 Ind. App. 112, 53 N. E. 1058.

8.

We find no error in the record. Judgment is therefore affirmed.

Note.—Reported in 97 N. E. 349. See, also, under (1) 26 Cyc. 1134; (2) 26 Cyc. 1392; (3) 3 Cyc. 242; (4) 38 Cyc. 1809; (5) 26 Cyc. 1180; (6) 38 Cyc. 1602; (7) 3 Cyc. 349; (8) 3 Cyc. 381. As to negligence and contributory negligence, and pleading and evidence in that connection, under the master and servant law, see note to *Brazil Block Coal Co.* v. *Gibson* (Ind.) 98 Am. St. 496. On the question of a servant's assumption of risk of being injured by dust or splinters caused by the progress of the work, see 25 L. R. A. (N. S.) 364. As to servant's assumption of risk of master's breach of statutory duty, see 6 L. R. A. (N. S.) 981; 19 L. R. A. (N. S.) 646; 22 L. R. A. (N. S.) 634; 33 L. R. A. (N. S.) 646; 42 L. R. A. (N. S.) 1229.