Arkansas National Bank of Hot Springs *v.* Colbert.

4-7881                                                           193 S. W. 2d 806

Opinion delivered April 15, 1946.

*Wootton, Land & Matthews,* for appellant.

*Murphy & Wood,* for appellee.

Robins, J. Appellee filed claim with the Workmen's Compensation Commission for disability caused by dermatitis which, she alleged, arose from her employment as teller in apellant bank. The commission awarded her compensation at the rate of $7.50 per week from March 1, 1943, to September 1, 1943, and from the latter date to July 12, 1944, at the rate of $20 per week, and also allowed her certain sums for medical expenses from June 20, 1943, to July 12, 1944. On appeal the circuit court of Garland county rendered judgment affirming all of the award made to appellee by the commission, increasing it so as to provide a payment of $20 per week from September 1, 1943, for permanent, total disability, and allowing all medical expenses in connection with her disability from June 20, 1943. To reverse that judgment the employer and its insurance carrier have appealed.

Appellants make two contentions: (I) That the disease suffered by appellee was not a type of dermatitis for which compensation is allowed under the Workmen's Compensation Law; and (II) that the lower court erred in finding that appellee was totally and permanently disabled and in making award to her accordingly.

I.

In that part of the Workmen's Compensation Law, dealing with compensation to employees for disability from certain occupational diseases, appears the following reference to dermatitis (subsection (5) of § 14, Act 319 of 1939): "The following diseases only shall be deemed

to be occupational diseases . . . 1. . . . 7. Dermatitis, this is, inflammation of the skin due to oils, cutting compounds or lubricants, dust, liquids, fumes, gases or vapors.''

Appellee, a lady sixty years of age, for a number of years had worked as cashier in various business offices, and from January, 1926, to April, 1943, had been employed by appellant bank as teller in charge of savings accounts and visitors' accounts. She first noticed the trouble with her hands during the summer of 1938, and in February, 1939, the condition of her hands became such that she was compelled to refrain from work at intervals, and from that time on she was unable to work regularly. She finally was forced to resign in April, 1943.

The beginning of her malady was the appearance of small blisters on her fingers. These blisters would break, causing the skin to become rough and raw and the hands red and swollen. The disease finally spread to her neck and arms. She consulted various physicians, and at first her trouble was thought to be caused by a food allergy. The Mayo Clinic, in 1941, determined that she was sensitive to the nickel coin. This diagnosis was confirmed by other physicians, two of whom found her allergic also to carbon paper. A specialist in Oklahoma City, to whom she was sent for examination by appellants, also found that her trouble was caused from handling nickel coins, but did not find the allergy to carbon paper.

Appellee's testimony that the dermatitis necessitated her resignation at the bank was corroborated by that of the institution's president.

Appellants do not argue that appellee did not suffer from the skin trouble nor do they seriously contend that this disease was not acquired by her in the course of her employment which required her to handle coins almost constantly. But appellants urge that it was not shown that the skin malady was caused by ''oils, cutting compounds or lubricants, dust, liquids, fumes, gases or vapors'' and that therefore appellee's disability is not com-

pensable under the terms of the Workmen's Compensation Act.

Dr. (Major) William F. Spiller, a specialist in dermatology, who examined and treated appellee, testified: "Q. Major, state whether or not you made any test to ascertain what was the cause of her trouble. A. Yes, I did some skin tests on her and found her sensitive to nickel and carbon, which were the principal ones. Let's see. I believe it was dust. Q. Look at that (referring to memorandum). A. Dust." This witness did not state that the "dust" referred to was from nickel or carbon paper, and there is language in the succeeding portion of his testimony that indicates that the witness might have been referring to dust in the ordinary usage of the word. But these two substances (nickel and carbon paper) necessarily give off some minute particles, and these particles may well be included in the term "dust." "Dust" includes in its meaning comminuted particles arising from metal, as well as from earth. "The word 'dust' . . . may include particles of iron and crystals created by and thrown off by an emery wheel." (Headnote 1) *Indianapolis Foundry Co.* v. *Lackey,* 51 Ind. App. 175, 97 N. E. 349. To the same effect, see *Indianapolis Foundry Co.* v. *Bradley,* 45 Ind. App. 530, 89 N. E. 505. The definition of "dust" given in Webster's New International Dictionary is "fine, dry particles of earth or *other matter* . . ." (Italics supplied.) Ordinary experience teaches that over a period of years the size and weight of all coins is materially reduced by handling; and this reduction is brought about by minute particles of the coins being constantly worn off by abrasive contact with the fiber of clothing, the leather of pocketbooks, the skin of human hands and with other substances.

We have frequently held that in construing the Workmen's Compensation Act its terms should be liberally construed, so as to provide compensation to an employee actually disabled, as defined by the Act, as a result of his occupation. "There should be accorded to the Workmen's Compensation Act a broad and liberal construction and doubtful cases should be resolved in favor

of compensation." (Headnote 4) *Elm Springs Canning Co.* v. *Sullins*, 207 Ark. 257, 180 S. W. 2d 113. Other cases exemplifying this rule are: *Hunter* v. *Summerville*, 205 Ark. 463, 169 S. W. 2d 579; *Williams Manufacturing Company* v. *Walker*, 206 Ark. 392, 175 S. W. 2d 380; *Mack Coal Co.* v. *Hill*, 204 Ark. 407, 162 S. W. 2d 906; *Bales* v. *Service Club No. 1. Camp Chaffee*, 208 Ark. 692, 187 S. W. 2d 321; *Sallee Bros.* v. *Thompson*, 208 Ark. 727, 187 S. W. 2d 956; *Harding Glass Co.* v. *Albertson*, 208 Ark. 866, 187 S. W. 2d 961.

When the applicable portion of the Act is construed in the light of the rule laid down in the above authorities, and effect is given to the testimony adduced before the commission, we cannot say that the finding of the commission and of the lower court that appellee had been disabled by an occupational disease as therein defined was improper.

## II.

It is not argued by appellants that appellee's ability to do the kind of work which she has been doing for more than seventeen years has not been destroyed by reason of the allergy, and the consequent return of dermatitis whenever she does any work that requires handling nickel or carbon paper. Appellants urge, however, that, because it was shown that appellee is an unusually intelligent woman, with a pleasing personality, she should be able to secure remunerative employment in some other business or profession. But there is no showing in the testimony that she could secure such employment; in fact there are very few occupations, open to a woman of her age and training, in which there would be no contact with the substances to which she has become allergic. Two of the physicians who testified stated that her disability was permanent. This testimony, not being contradicted by any substantial evidence, when taken in connection with appellee's age and lack of training in any line of work, other than the one in which she was disabled, was sufficient to authorize the finding that by reason of occupational disease appellee had become totally and perma-

nently disabled within the meaning of the Workmen's Compensation Law.

The judgment of the lower court is accordingly affirmed.

Mr. Justice McFADDIN dissents.

ED. F. McFADDIN, Justice, dissenting. I dissent on both the points decided by the majority, *i.e.*, I. The Basis of Recovery; and II. The Amount of Recovery.

I. *The Basis of Recovery.* The appellee claims that she suffered an occupational disease, and that her malady is compensable under § 14, subdivision 7, of the Workmen's Compensation Law, which is:

"Dermatitis, this is, inflammation of the skin due to oils, cutting compounds or lubricants, dust, liquids, fumes, gases or vapors."

It will be noticed from the above definition that dermatitis, to be compensable under our statute, must be caused either by oils, cutting compounds, lubricants, dust, liquids, fumes, gases or vapors. I emphasize that the statutory limitation of dermatitis does not include that form of dermatitis caused by *contact with solids.* The proof in this case is ample to show that the appellee suffered from dermatitis caused by *coming in contact with nickel,* which is a solid. It is doing violence to the legislative limitation of dermatitis to include a disease caused by *coming in contact with a solid.*

To bring the appellee within the statute, the majority has reached the conclusion—as a matter of law—that nickel coins pulverize to such an extent as to emit a dust. There is no proof of such a fact, and I do not believe our national coinage admits of such a conclusion. That coins wear thin and rub off, is true; but they do so by contact, not by pulverizing into dust particles. Nickel, of all minerals, does not pulverize. Webster's New International Dictionary, Second Edition (printed in 1944) says that nickel is "resistant to oxidation." See Encyclopaedia Britannica, 14th Edition, Volume 16, page 423; and Encyclopaedia Americana, 1937 Edition, Volume 20, page

321. In order to allow a recovery to the appellee in this case, the majority has reached a legal conclusion that is at direct variance with the laws of chemistry and physics.

It is certainly "stretching things" to say that a 5c coin emits a dust which would get on the hands of a person who came close to the coin, but without touching it. I cannot believe that the Legislature intended such effect to be given the statutory definition of dermatitis. The Workmen's Compensation Law should be liberally construed, but not extravagantly extended. It is for the Legislature to change the definition of dermatitis, rather than for the court to place itself in the position of holding that 5c coins emit nickel dust which causes dermatitis to anyone merely in proximity. The only coin that contains any nickel is the 5c coin dated prior to 1942. This stipulation appears on the record:

". . . the Director of the Mint would testify that the one-cent coin is composed of 95 per cent. copper and 5 per cent. tin and zinc that as of 1943 the one-cent piece was zinc coated steel; as of 1944 the one-cent coin is 95 per cent. copper and 5 per cent. tin and zinc; that the five-cent piece was in the past 75 per cent. copper and 25 per cent nickel; as of March, 1942, the five-cent piece is 35 per cent. silver, 56 per cent. copper and 9 per cent. manganese; that all United States silver coins are 90 per cent. silver and 10 per cent. copper."

II. *The Amount of the Recovery.* The Workmen's Compensation Commission found that the appellee's disability was temporary. The circuit court—on the same record—found that the disability was permanent. We are committed to the rule that the finding of fact by the Commission is entitled to the force and effect of a jury verdict. In *Hughes* v. *Tapley,* 206 Ark. 739, 177 S. W. 2d 429, we said:

"The rule is well established, under the Workmen's Compensation Act that 'Findings of fact made by the Workmen's Compensation Commission are, on appeal, given the same verity as attach to the verdict of a jury, and this applies on appeal to the circuit court as well as

to the Supreme Court from the circuit court.' (*J. L. Williams & Sons, Inc.*, v. *Smith*, 205 Ark. 604, Headnote 2, 170 S. W. 2d 82.) See, also, *Lundell* v. *Walker*, 204 Ark. 871, 165 S. W. 2d 600.

"This rule was applied in the recent case of *McGregor & Pickett* v. *Arrington*, 206 Ark. 921, 175 S. W. 2d 210. It was there said: 'It may first be said that the conflicts in the testimony are slight, and unimportant, but if the facts were otherwise, we would not disturb the findings of the commissioners, if there is substantial testimony to support their findings.' See, also, *Birchett* v. *Tuf-Nut Garment Manufacturing Company*, 205 Ark. 483, 169 S. W. 2d 584; *Hunter* v. *Summerville*, 205 Ark. 463, 169 S. W. 2d 579; *Solid Steel Scissors Company* v. *Kennedy*, 205 Ark. 958, 171 S. W. 2d 929; and *Baker* v. *Silaz*, 205 Ark. 1069, 172 S. W. 2d 419.

"The rule is also well settled that in testing the sufficiency of the evidence before the Commission, the circuit court, on appeal from the Commission, and this court, on appeal from the circuit court, must weigh the testimony in its strongest light, in favor of the Commission's findings."

There was evidence before the Commission to sustain its finding that the disability was temporary. In his additional deposition of February 2, 1945, Lt. Col. Spillers (a medical doctor) testified:

"Q. When you testified here that her hands were cleared up, you made a physical inspection of them, and you meant what you said at that time, didn't you?

"A Yes.

"Q. In other words, you testified that her hands were clear. Now, at that time, you made no attempt to say what the condition would be in three or six months, but at that time you stated her hands had cleared.

"A. The inflammation had subsided. I didn't mean by any means that this sensitivity was not still present.

"Q. I understand that. I am not asking you whether there remained a sensitivity or not. I asked you at that

time whether her hands were clear and you said they were. You meant that, didn't you?

"A. Yes, sir.

. . . .

"Q. Are you prepared to go on record and say that Mrs. Colbert, at the time you saw her in September and at the time you saw her today, was not and is not in her present condition capable of performing the ordinary tasks around an office.

"A. Yes, as long as she stays away from things she is sensitive to.

"Q. I am asking you about the condition in which you found her hands today—not attempting to describe what they will be in the future, but looking at the places as you saw them in September, and the condition in which you see them today, isn't it apparent to you that she could do the ordinary things around an office?

"A. Certainly."

By allowing permanent recovery in this case, the majority is overturning the Commission's finding on a question of fact. Our rule has always been to sustain the Commission's finding on a question of fact.

For the reasons stated, I respectfully dissent.