## SOUTHERN COTTON OIL CO., INC. *v.*
## James FRIAR

5-5004                                    444 S. W. 2d 556

Opinion delivered September 15, 1969

*Hout, Thaxton & Hout,* for appellant.

*Smith, Williams, Friday & Bowen;* By: *George Pike, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. James Friar, appellee herein, is a common laborer with a background of steady employment until October 29, 1963, when his right hand was mutilated in a saw-type apparatus while employed by appellant, Southern Cotton Oil Company. It subsequently became necessary that the hand be amputated, and this was done on May 30, 1964. The company paid appellee's medical and hospital expenses, paid for his prosthesis, and 40 weeks' compensation during the healing period. Thereafter, Friar applied to the commission for the payment of a total of 150 weeks of compensation in two lump sum payments, and, with the written consent of appellant, the commission approved

the two payments, the last of which was made on October 16, 1964. On November 3, 1967, appellee filed a claim for additional compensation, seeking total and permanent disability, additional medical treatment, and an attorney's fee based on all sums awarded. This claim was controverted by the company, appellant taking the position that a joint settlement had been entered into between the parties, and claimant was accordingly barred from making any further claim. The company was also of the view that, at any rate, Friar's claim was barred by the statute of limitations, since the claim was not filed until more than two years after the last lump sum payment was made on October 20, 1964. The claim was heard by a referee who held that the two lump sum applications filed by the parties did not constitute a joint petition within the meaning of the Workmen's Compensation Act, and who further held that Friar had until July 12, 1968, to file for additional benefits, and the claim accordingly was not barred. It was ordered that the company offer medical treatment to claimant for the removal of a neuroma on the stump of the right arm, and for the fitting of the prosthesis that had already been purchased by the company (but could not be used after the appearance of the neuroma[1]). This was the extent of the award, and appellee appealed to the full commission. On hearing, the commission agreed with the referee that the lump sum payments did not constitute a joint petition settlement, and that the filing of the claim was not barred by the statute of limitations. The commission held that, as long as Friar was disabled with a curable neuroma on the stump of his right arm caused by the injury or the surgical amputation, the healing period had not ended, and it found that he had been totally disabled from the performance of any available work for which he was fitted.[2] Thereupon the commission directed as follows:

---

[1] A tumor arising from nerve tissue.

[2] The commission said:

"This neuroma has prevented claimant from the use of the prosthesis, and considering his age, occupational experience, lack

"Beginning on October 30, 1963, and continuing subject to the limitations and provisions of the Arkansas Workmen's Compensation Law, respondent shall pay claimant compensation at the rate of $35.00 per week until the further order of this commission, but shall take credit for compensation for 190 weeks already paid claimant. All compensation which has already accrued shall be paid in one lump sum, and all compensation which had accrued on March 20, 1968, the date of the filing of the referee's award, shall bear interest from that date until paid at the rate of six per cent per annum, and all compensation accruing since said date shall bear interest at the rate of six per cent per annum from the date of accrual until paid."

In addition, the company was directed to make arrangements with Dr. H. Austin Grimes of Little Rock for the further treatment of Friar's right arm, and appellant was required to furnish reasonable hospitalization services for and during the period of claimant's treatment. It was then directed that, after the arm had healed, the company should furnish a suitable prosthesis, and provide for the fitting of same. The commission stated that it would then hear further evidence on the question of Friar's permanent disability, if any. This award was appealed to the Jackson County Circuit Court, which affirmed the commission. From the judgment so entered, appellant brings this appeal. Two points are relied upon for reversal, *viz*, first, "The appellee's claim for additional compensation is barred by the statute of limitations." Secondly, "There is not sufficient competent evidence in the record to warrant the award of temporary total disability from October 29, 1963." We proceed to a discussion of these contentions.

Let it first be said that the question of whether the

of education, lack of skill in any occupation except physical-manual labor, the unavailability of employment for a person of his qualification and condition, and the fact that he has not been able to use his right arm, we are led to the conclusion that during this period of time he has been totally disabled from the performance of any available work for which he is fitted."

two "lump sum settlements"[3] constituted a "joint petition"[4] is no longer at issue in this case, appellant not arguing this contention in its brief, and stating in open court that it no longer relies upon that assertion. The principal question before us is, where a lump sum payment is made, whether the statute of limitations commences to run from the date of that payment, or whether it does not commence until the date the last payment of compensation would have been due, had the payments been made only as they accrued. We have, after a thorough study of this issue, concluded that the statute only commences at the date the last payment would have been due if the compensation had been paid in installments, and we are accordingly of the opinion that the commission and the Jackson County Circuit Court decided this question correctly for the reasons hereafter set out, and the trial court should be affirmed.

The statute in issue is Ark. Stat. Ann. § 81-1318(b) (Repl. 1960), and reads as follows:

"In cases where compensation for disability has been paid on account of injury, a claim for additional compensation shall be barred unless filed with the Commission within one [1] year from the date of the last payment of compensation, or two [2] years from the date of accident, which ever is greater."

This is a case of first impression in this state, and research discloses that the courts of other jurisdictions have differed in their answer to the question presented. In 165 A. L. R. there is a discussion at Page 59, as follows:

"In order to determine whether an application for review, reopening, modification, or reinstatement has

[3]See Ark. Stat. Ann. § 81-1319 (k) (Repl. 1960).

[4]See Ark. Stat. Ann. § 81-1319 (1) (Repl. 1960). See also *Brooks* v. *Arkansas-Best Freight System, Inc. Employer; Adrian L. Ferguson* v. *Arkansas-Best Freight System, Inc., Employer,* handed down Sept. 2, 1969.

been filed within the time limits prescribed in the local law, it frequently is necessary to ascertain preliminarily what the date or time was when compensation was last previously paid. The only generalization warranted by the authorities (different statutes and different fact situations being involved in the decided cases) is that an effort is made to construe the statutes liberally, but without doing violence to their plain import and purview, in determining upon what date the last previous payment of compensation was made.

"In determining the date of the last previous payment of compensation, it has been held that the period of limitation which starts to run from the date of 'last payment of compensation' runs from the date when such a last payment actually was due, and that a review application will not be barred where it was made within the statutory period following that date, notwithstanding that payment itself was actually made by check in advance of the due date. But it has been held conversely, although consistently with the previous holding, that the actual date of the last payment will be controlling to determine the commencement of the running of the period, where payments which were due are made belatedly. The period starts to run from the date when the last period[4a] actually was made, not from the date when such payment would have been made had the payments been made regularly from the date of the accident.

\* \* \*

"It sometimes happens that compensation which was being paid in weekly or similar installments is commuted and paid in a lump sum. As a physical actuality, in such a case the injured employee receives the 'last' payment of compensation very much earlier than he would have received it had the compensation continued to be paid in installments. It is then sometimes contended that the statutory period for review started to run from the time the commuted payment would have been made had there been no commutation. Although the au-

---

[4a]This word is obviously a misprint, and should be "payment."

thorities are not in complete agreement, most of the courts which have passed on this question have held that where compensation is commutated and paid in a lump sum, payment so made at the time of commutation does not constitute a 'last' payment so as to start the running of the statutory period within which review may be sought; the statutory period, in such a case, does not run against a review application until the time when the payments on the original award or agreement would have run out had they continued to have been paid in installments.[5] As a reason for such rule, it has been pointed out that commutation does not in and of itself affect the merits as to whether in a particular case further compensation may or may not be attempted to be secured, but constitutes nothing more nor less than an advance payment.''

We have held that the Workmen's Compensation Act is to be liberally construed.[6]

Let it be remembered that the lump sum payment is not an advantage to the claimant; in making this settlement, the company is not mistreated in any manner. The lump sum settlement is frequently of benefit to all parties. The claimant receives the cash, and is able to pay bills which may have accumulated during his absence from work, and the company receives the benefit of a 4% discount when the accrued compensation is paid in a lump sum.[6a] Were appellant's view to be adopted

[5]Our research reveals cases from six states which have passed upon this question, New York, Pennsylvania, and New Jersey holding in the manner. cited in this annotation as the majority rule, while Florida, North Carolina, and Maryland have held to the contrary.

[6]*Boyd Excelsior Fuel Company* v. *McKown*, 226 Ark. 174, 288 S. W. 2d 614; *Reynolds Metal Company* v. *Brumley*, 226 Ark. 388, 290 S. W. 2d 211; and cases cited therein.

[6a]Even if reduction of the installment payments to present value is not a benefit to the company, it is still relieved of the burdensome clerical work and bookkeeping attendant upon making numerous payments.

by this court, the employer would receive an additional benefit, *i. e.,* the statute of limitations would be shortened.

Both appellant and appellee cite the case of *Phillips* v. *Bray,* 234 Ark. 190, 351 S. W. 2d 147. If the case can be said to be of aid to either party, it would appear that the language is favorable to appellee. In *Phillips,* a lump sum payment of $1,406.25 was paid to claimant by the insurer on December 12, 1958, this amount covering periodic installments which had already accrued. On January 18, 1960, claimant filed a claim for total permanent disability. The employer contended that the claim was barred by the statute presently under discussion, inasmuch as such claim was not filed within one year from the date of the last payment (the lump sum payment of December 12, 1958). We held that the claim was barred; however, we made specific mention of the fact that the lump sum payment was for accrued installments "and *not for future accruals.*"[7] One of the justices dissented on the basis that the record did not make clear that the $1,406.25 payment was to take care of payments which had already accrued, rather than future accruals.

Appellant relies to a great extent upon our case of *Jones Furniture Manufacturing Company et al* v. *Evans,* 244 Ark. 242, 424 S. W. 2d 880, and, at first blush, it might appear that the case is strong support for appellant's position. *Jones* did not involve a lump sum settlement. There, claimant was given an award of compensation for an injury received on May 13, 1964. On June 16, 1966, the claimant filed for additional compensation as a result of the May, 1964, injury and again received an award of compensation from the commission. The last installment of the original award had been due on June 4, 1965. The company made this payment, but was late in making it, the payment actually being made on June 17, 1965. Appellant appealed the commission

---

[7]Emphasis supplied.

award based on the June 16 claim to this court, contending that the claim was barred by the statute of limitations since it had not been filed within one year of the due date of the last payment, June 4, 1965. The claimant contended that his claim was filed in time, since it was filed less than one year (by one day) after the last payment had actually been made.

We have given considerable thought to the holding in *Jones,* realizing that in affirming the case now before us, it could perhaps appear offhand (though it is not argued by appellant) that this court, under the same circumstances, has held both that the statute commences to run at the time the last payment is actually made (as in *Jones*), and contrariwise, that the statute does not begin to run until the payment becomes due. It might thus appear that the claimant could prevail under either set of circumstances, and it goes without saying that such a result would seem grossly unfair to an employer. But a look at the facts in *Jones* makes it clear that that case was correctly decided, and is not, in any way, in conflict with the present holding. In the New Jersey case of *Bucci* v. *Kirkpatrick Construction Company,* 166 A. 203,[8] the same factual situation arose, the only difference being that *Bucci* was not decided until after the New Jersey Supreme Court had held that in cases of advance settlements the statute did not commence to run until the due date of the final installment.[9] In *Bucci,* the court said:

---

[8]This case was decided by the Court of Common Pleas of New Jersey, and is referred to in the ALR annotation previously mentioned in the present opinion.

[9]In *Harris* v. *International Motor Company,* 153 A. 97, the final installment of the compensation due the claimant was paid in advance of the due date, but the Supreme Court of New Jersey held that the phrase in the statute, "within one year after last payment of compensation," authorized the injured claimant to file petition for further compensation within a year after the last payment of compensation was due, rather than when it was actually made. This holding has been reiterated several times, the last case we have found being *Roberts* v. *All American Engineering Com-*

"It will be seen immediately that the present petition was filed more than a year after the date when the previous compensation payments would have expired had they been regularly paid since the accident, but less than a year from the time the compensation settlement award was made, after which date, of course, the last payments were made in fact. Respondents thereupon rely upon *Harris* v. *International Motor Company, supra*. There the employer had made payment before it came due. Counting the year from the date of the last payment in fact, the filing of the petition considered in the Harris Case was out of time. But, counting the year from the date the last payment should have been made, the petition was filed within time. The statute there considered, P. L. 1918, chap. 149 § 5, similarly provided for the filing of the petition 'within one year after the last payment of compensation.' The court there liberally construed the statute to hold the petition to be filed within time.

"Respondent in the case at bar accordingly argues that the converse should apply; *i. e.*, that where an employer has made payment, not too soon but belatedly, the period should be counted, as in the Harris Case, from the time it should have been paid, not from the time it was paid in fact. But the present situation differs radically in law and common fairness from that in the Harris Case. There the court liberally interpreted the words of the statute to meet a situation where the parties had acted contrary to the ordinary course of human events, in making payment before the due date, a situation which it was hardly to be expected that the words of the statute would clearly cover. Here, on the contrary, the employer has not made payment steadily since the accident, as it has now been found he should

*pany*, 248 A. 2d 280 (Nov. 1968). In this case the court comments that the period of limitations does not commence to run, though a lump sum payment had previously been made, until the last payment would have been due had it been paid by installments. The present New Jersey statute provides a two-year statute of limitations.

have done, but has made same only after being required by the court to do so, a very normal situation. To this situation the words of the statute directly apply, that the period shall be counted as starting from 'the last payment of compensation.' *To apply the statute in the manner contended by the respondent would permit the employer by adroit adjournment, and failure to do what it is now found he should have done, to bar petitioner of his statutory rights, in the very face of the words of the statute, a result repugnant to every principle of justice.*"[10]

We think the position of the New Jersey court was sound and logical. Certainly, to permit an employer or its insurance carrier to make a late payment, *i. e.*, subsequent to the due date of the final payment, and then rely on that fact to bar claimant, would be permitting one to profit by his, or its, own wrong, and might well encourage companies to make late payments as an additional aid in invoking the statute of limitations. It is thus seen that there is really no conflict between the ruling in *Jones Furniture Company* v. *Evans, supra,* and the holding in the present case, for, if the payment in *Jones* had been made when it was due, instead of 13 days late, the claimant would have been barred under our statute of limitations.[11]

In *Phillips* v. *Bray, supra,* we said:

"* * * It seems perfectly obvious that the primary purpose of the one-year statute of limitations is to give the claimant that much extra time in which to decide whether he has been fully compensated for his injury, * * * ."

---

[10]Emphasis supplied.

[11]Ark. Stat. Ann. § 81-1319(h) (Repl. 1960), by requiring notice to the commission of final payment within 30 days points up the significance of prompt payment in relation to the statute of limitations. This notice permits the commission to see that the rights of the claimant have been protected.

That being true, it would not appear that it was the intent of the General Assembly, in passing this act, to cut off the one-year period which is allowed the claimant to make this determination. We hold that the claim was not barred by the statute of limitations.

As far as this record is concerned, we do not feel that the evidence is sufficient to enable us to pass on the question of whether the award of temporary total disability from October 29, 1963, should be upheld. In June, 1964, Dr. Grimes, by letter, stated that, following the date of surgery in May, 1964, the post-operative course was uneventful. He said that the stump was well healed, and had satisfactorily shrunk to allow fitting for an upper extremity prosthesis. However, in December, 1967, Grimes made a report, stating that Friar continued to have pain over the wrist stump, and observing that there was a need for revision of the stump (because of a neuroma formation) in order to allow the utilization of a prosthesis. Friar testified that he had been unable to obtain employment since the accident, and he mentioned applications that had been made at several places. He testified that he was unable to wear the hook (because of the neuroma), and accordingly had only one hand to use in his work. The evidence reflected that claimant had a fourth grade education, and the only work that he had ever performed was common labor. There was no evidence offered that claimant could have obtained work, and it seemed certain that he did not have the use of but one hand. However, as stated by Commissioner Oliver Wendell Holmes in a dissenting opinion as to Point 2, there is no evidence that the neuroma discovered by Dr. Grimes in December, 1967, had been in existence all during the period following the accident. And, as stated by Commissioner Holmes, it is not at all clear why Friar waited more than three years to seek additional medical attention.

We think this phase of the case should be more fully developed, and the case is reversed as to Point Two

and remanded to the Jackson County Circuit Court, with directions to remand same to the Workmen's Compensation Commission for further proof on the question of when the present disability commenced, *i. e.*, when the neuroma discovered by Dr. Grimes in December, 1967, first evidenced itself.

It is so ordered.