Argued December 16, 1974, affirmed January 14, 1975

# NEWMAN (No. 399320), *Appellant, v.*
# MURPHY PACIFIC CORPORATION, *Respondent.*

530 P2d 535

*Alan M. Scott,* Portland, argued the cause for appellant. With him on the brief were Galton & Popick and Gary M. Galton, Portland.

*Don G. Swink,* Portland, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

This appeal is from a judgment of the circuit court denying claims for permanent partial disability and

for the assessment of penalties and attorney fees due to the insurer's allegedly unreasonable resistance and delay in the processing of that claim. The Workmen's Compensation Board and the hearing officer had previously made similar orders.

Claimant, a 38-year-old ironworker, sustained two industrial injuries, the first on April 13, 1971 when he was struck on the head by a bucket of bolts and fell on an exposed H-beam, and the second on July 23, 1971 when he was hit by a winch handle. In each instance a laceration to the head was sutured by a treating physician and claimant was released with no loss of time from work.

In each instance the insurance carrier certified claimant's condition as medically stationary and requested that the "medical only" claim be administratively closed within a few days, which was done in each instance by the Board.

In late August, several weeks after the second closure, claimant left his job with Murphy Pacific Corporation because, according to claimant's testimony, he suffered from severe headaches. He made no disability claim then, but did apply for unemployment compensation (for which he presumably certified himself able to work). On September 22, 1971 he consulted Dr. David Rich, a neurologist, with complaints of headaches, mild tinnitus and slight dizziness. The results of all tests and examinations, however, were normal. Dr. Rich diagnosed claimant's condition as "post-concussion headache," prescribed an intermediate strength analgesic and noted that the headaches would, in his opinion, subside within the near future, leaving no neurologic residuals.

Claimant saw Dr. Rich three more times: January 13, 1972, February 28, 1972 and October 19, 1972. Examinations continued negative and Dr. Rich re-expressed his opinion "that this patient has a post-concussion headache, that he will be left with no permanent disability, and that the symptoms will spontaneously self-limit after the passage of more time * * *."

Claimant sought a hearing on the "medical only" claim closures. On October 12, 1972 a hearing officer held that both claims were in an open status, and it appeared that until determination orders were made, removing the claims from open status, it was impossible to proceed with a hearing. Counsel for claimant had a frustrating exchange of letters with the insurance carrier and the claims department of the Workmen's Compensation Board for several months seeking to get the matter back on the track. By stipulation the parties later agreed that claimant would be examined again by Dr. Rich (this was the final October 19, 1972 examination referred to above) and that all the medical reports would then be submitted to the Board's Closing and Evaluation Division for determination.

Determination orders were finally entered January 18, 1973, by which claimant was awarded no temporary or permanent disability. Claimant then requested a hearing. He was subsequently examined by Dr. Jonathan Levine, also a neurologist, whose findings concurred with the other medical evidence.

Claimant testified at the requested hearing held on June 26, 1973 that heat and noise so severely aggravated his headaches that he had been forced to leave a number of jobs and had been limited in the type of job he could take. He offered as evidence income tax

records showing that his gross income, which was $13,111 for 1970, diminished to $11,624 for 1971 and to $9,386 for 1972. He testified that he had earned $3,900 for the first six months of 1973.

We agree with the hearing officer's opinion which stated in relevant part:

"\* \* \* [T]here is no specific medical connection made between his difficulty with noise or heat to the industrial injuries. The medical consensus appears to be that this workman has a post-concussion syndrome or a post-concussion headache. There is no indication the situation is permanent \* \* \*.

"\* \* \* \* \* \*.

"Evaluation of unscheduled disabilities is based on a workman's loss of future earning capacity. After giving consideration to all the evidence, I am not convinced that this workman has sustained any loss of earning capacity as a result of the industrial injuries of April and July 1971. Therefore, I find no basis upon which to make an award to this workman."

Penalties and attorney fees are available under ORS 656.382 and 656.262 (8) where the "insurer unreasonably delays or unreasonably refuses to pay compensation \* \* \*." In support of his request claimant first points to a two-and-one-half-month delay between the time Dr. Rich first billed the insurer for an "EEG" and the time of payment and a four-month delay (figured similarly) in regard to a $60 bill. The latter bill was missent by the doctor's office to the Board rather than the insurer, then, when the error was corrected, a delay of several months in payment occurred.

We have treated medical expenses as "compensation." *See Francoeur v. SAIF,* 17 Or App 37, 520 P2d

477, Sup Ct *review denied* (1974), where we left undisturbed the assessment by a hearing officer of penalties and attorney fees, but refused further penalties and fees.

■ The question of allowance of such fees and penalties being such as we can consider, then, the remaining issues raised by claimant are those stated as follows by the hearing officer:

> "Claimant requests penalties and attorney fees for late payment of a $60 doctor bill on the basis of unreasonable delay and unreasonable resistance. Claimant also requests penalties and attorney fees on the ground the carrier did not timely request a determination from the Closing and Evaluation Division. Penalties and attorney fees are also requested on the grounds the carrier was premature in requesting the original 'medical only' claim closures * * *."

It is one of claimant's contentions that the five-year period for filing a claim for aggravation of an injury under ORS 656.273 (3) was sneakily started to run by the premature administrative "medical only" closing.

■ With reference to these claims, we have reviewed the record and, while we find there is a suspicion that the $60 doctor bill was known by the carrier to be due and it was not paid until forcefully called to its attention, the bill also was misaddressed by the doctor's office. There simply was not a preponderance of evidence favoring claimant's contention in this regard.

■ The insurer's response to a claimant's letter of May 31, 1972 seeking determination orders was to send the Workmen's Compensation Board a Form 802 which gave an impression the claim was being voluntarily

left open. This probably was partially responsible for bringing about a seven-and-one-half month delay in handling claimant's request, although this is not clear. The reason we say it is not clear is because one among the frustrating exchange of letters with the claims department of the Workmen's Compensation Board shows it saying the correspondence appeared to have gone "astray." We cannot, from the record, tell where the cause for delay occurred. In any event, we find claimant suffered no ultimate prejudice, and we see no proof of anything intentional about the carrier's having caused a delay; therefore, we do not consider it to have been proven "unreasonable." *See* ORS 656.-262 (8).

With reference to the running of the five-year period for filing an aggravation claim, claimant seeks to have us set such dates as those of the later determination orders rather than the "medical only" closures. No claim of aggravation has been made. If a determination of the commencement time for running of the five-year period must sometime be made, it will be proper after such a claim is in existence.

Affirmed.