## MODEL LAUNDRY & DRY CLEANING and SENTRY INSURANCE COMPANY v. Gary D. SIMMONS

CA 79-202                                    596 S.W. 2d 337
Court of Appeals of Arkansas
Opinion delivered March 5, 1980
Released for publication March 26, 1980

*Jones & Segers,* for appellants.

*Kendall & Schrantz,* for appellee.

DAVID NEWBERN, Judge. In this workers' compensation appeal we are asked to decide the following questions: (1) whether the "maintenance expenses" part of the rehabilitation benefits provided by Ark. Stat. Ann. § 81-1310(f) (Supp. 1979), may be based on income reduction which occurs during a retraining period; (2) whether the statutory penalty for late payments provided by Ark. Stat. Ann. § 81-1319(f), (Repl. 1976), extends to late payment of medical bills and attorney's fees or is limited to compensation installments which should have been paid to the claimant; and (3) whether there was substantial evidence to support the commission's finding (a) that certain medical bills were controverted by the appellants and (b) that the appellee was permanently disabled to the extent of 15% to the body as a whole. We will discuss these points separately after setting out the facts.

The appellee suffered an undisputedly compensable injury while working for the appellant Model Laundry in May, 1975. For undisclosed reasons, his initial workers' compensation claim which was filed April 15, 1976, stated the date of

injury, erroneously, as January 19, 1976. Appellant Sentry Insurance Co. controverted permanent partial disability in excess of 10%. Temporary total disability payments were made in June, 1976, covering a period beginning January 19, 1976. Presumably the payments continued until September 23, 1976, the date of the end of the temporary total disability determined by the administrative law judge. Other findings in the September 19, 1977, opinion of the administrative law judge included one to the effect that the appellants controverted certain medical bills in the amount of $1714.36. The administrative law judge concluded the appellants should pay those bills and the maximum attorney's fee with respect to those bills. He also concluded the appellee was permanently disabled to the extent of 33 ⅓% to the body as a whole, and awarded maximum attorney's fees on the award to the extent it exceeded 10%.

A major issue addressed in the September 19, 1977, opinion was whether the medical bills were controverted. Although he recognized there had been some confusion at the outset caused by notice to the wrong carrier and the inaccurate statement of the date of injury by the appellee, the judge found most of the medical expenses in question had been incurred in March, 1976, and no effort to pay them had been made as late as May, 1977, although the evidence indicated the bill had been sent to Sentry on September 13, 1976.

The administrative law judge concluded the appellee was a suitable candidate for a rehabilitation program, but that no plan for rehabilitation had been submitted, and thus no award could be made in that respect.

On appeal to the full commission, the finding of controversion of the medical bills was affirmed. The commission concluded that it could make no final determination as to permanent disability, however, as the administrative law judge had reserved the question of rehabilitation. The commission found, however, no dispute as to anatomical disability of at least 10%, and thus ordered the appellants to make payments based on that percentage. The case was remanded to the ad-

ministrative law judge for a determination with respect to rehabilitation.

The appellee submitted to the administrative law judge a rehabilitation plan which consisted of working in a wood crafts shop, where he had already begun work, making "novelty items" with the prospect of becoming the owner of the shop after a training program to last from January 1, 1978, until June 1, 1978. Based on a finding that the appellee's income would be reduced from that which he was earning while working for Model Laundry, the administrative law judge awarded rehabilitation benefits of $2100. In the same opinion, dated July 20, 1978, the administrative law judge ordered the appellants to pay a 20% penalty plus interest on the still unpaid medical bills and the attorney's fee which had been added with respect to those bills because they were controverted. This. was done over the objection of the appellants that the award had not yet become final. The administrative law judge concluded there was no reason not to have paid the medical bills and related attorney's fee, as the case had been remanded to him solely to deal with the rehabilitation matter.

On appeal to the full commission, the penalty awarded was affirmed. The commission also ordered payment of $1695.75 representing maintenance benefits pursuant to Section 10(f) of the act for 25 ½ weeks at the rate of $66.50 per week." This part of the award apparently replaced the $2100 the administrative law judge had awarded as rehabilitation benefits. The commission ordered payment of benefits for permanent disability to the extent of 15% to the body as a whole less payments already made on the previous 10% determination plus attorney's fees on the increment. This amounted to a modification of the initial 33 ⅓% permanent disability finding.

## I. *Rehabilitation Benefits*

Ark. Stat. Ann. § 81-1310(f) (Supp. 1979), says, in part:

In addition to benefits otherwise provided for by this Act, an employee who is entitled to receive compensa-

tion benefits for permanent disability shall be paid reasonable expenses of travel and maintenance and other necessary costs of a program of vocational rehabilitation, if the Commission finds that such program is reasonable in relation to the disabilities sustained by such employee ..

The commission found fault with the administrative law judge's determination of rehabilitation benefits because he calculated them on the basis of the difference between the income the appellee received before his injury and his income during the proposed training program. But the commission's own calculation was based on the same differential, adding to it the notion that rehabilitation maintenance is equivalent to a special or additional period of "temporary partial disability." The commission concluded the appellee was entitled to six months (25 ½ weeks) of payments at 66 ⅔ of his average weekly wage as provided in Ark. Stat. Ann. § 81-1313 (b) (Repl. 1976).

We find no authority for this kind of calculation. The commission seems to have done the same thing for which it criticized the administrative law judge, *i.e.,* fixing maintenance benefits by referring to lost wages. The only thing added by the commission was its reference to § 81-1313 (b) which provides for compensation for temporary partial disability. We find no connection whatever between that section and the one providing for rehabilitation benefits. While the former contemplates reduced income, the latter deals with *costs* of rehabilitation. They are not the same.

While we have no cases to which we can refer, the tenor of § 81-1310(f) contemplates rehabilitation at an institution or place away from the claimant's home, thus necessitating "maintenance." See, 2 Larson, *Workmen's Compensation Law,* § 61.20 (1976). In this case the appellee had moved to the training site where he planned to remain. We hold loss of income and temporary partial disability are irrelevant to rehabilitation maintenance benefits, thus there was not substantial evidence to support the commission's award of $1695.75 for such benefits.

## II. *Penalties*

The appellants contend the penalty provision of the Worker's Compensation Act does not provide for imposition of penalties on delinquent payment of medical bills and attorney's fees. The two basic reasons stated are, first, the Act refers to penalties only with respect to failure to pay "installments" on time. Ark. Stat. Ann. § 81-1319(f) (Repl. 1976). Our Act does not provide for the payment of medical bills and attorney's fees in installments. See, Ark. Stat. Ann. §§ 81-1311 and 1332 (Supp. 1979). Secondly, our Act does not deal with reimbursement of the claimant for medical and legal expenses, thus imposition of the penalty would raise a question to whom it should be paid.

Neither this court nor the Arkansas Supreme Court has dealt with this problem as far as we know. It has been considered only rarely in other jurisdictions. In California there were a number of appeals courts decisions dealing with the question, some of them conflicting. See, *e.g., Ramsey* v. *Workmen's Comp. App. Bd.,* 18 Cal. App. 3d 155, 95 Cal. Rptr. 558 (1971); *Vogh* v. *Workmen's Comp. App. Bd.,* 264 Cal. App. 2d 724, 70 Cal. Rptr. 722 (1968). The matter was settled by the California Supreme Court in *Adams* v. *Workers' Comp. App. Bd.,* 18 Cal. 3d 226, 133 Cal. Rptr. 517, 555 P. 2d 303 (1976), which held the penalties provided by the California Code apply to medical and legal obligations. The case makes it clear, however, that the California law contemplates reimbursement of the claimant rather than direct payment of these expenses. In addition, the California statute which is comparable to our § 81-1319(f) makes no mention of installments but clearly says it applies by *any* payments to be made pursuant to the award. *Cal. Lab. Code* § 5814 (1976).

Louisiana courts of appeals have held their penalty statute, La. Rev. Stat. Ann. § 23, 1201.2 (1964), "obviously" applies to the medical payments parts of an award as it says it applies to "any claim due" under the law. *Dupre* v. *Sterling Plate Glass & Paint Co., Inc.,* 344 So. 2d 1060 (La. App. 1977); *Scott* v. *Hartford Accident & Indemnity Co.,* 302 So. 2d 641 (La. App. 1974). Again no mention of "installments" appears in the statute, and it is clear from the statute and the cases that the money is to be paid as reimbursement to the employee rather than directly.

There are indications that Minnesota, *Rogers* v. *Cedar Van Lines,* 281 N.W. 2d 669 (Minn. 1979), and Oregon, *Newman* v. *Murphy Pacific Corp.,* 20 Ore. App. 17, 530 P. 2d 535 (1974), might permit penalties to apply to other than pure wage loss payments, but the referees in the cited cases are too sketchy to serve as authority.

As no other jurisdiction has decided this question interpreting a statute like ours or in a system where direct payments to doctors and lawyers rather than reimbursement to claimants is contemplated, we are left with a question of raw statutory interpretation. The California and Louisiana experiences help some, as at least we know the question was resolved in those states as a matter of literal statutory language, and they, as we, apparently were unable to discover any general authority or other application of workers' compensation philosophy to the problem. As we see it, we should be and are relegated to this kind of interpretation of the letter of the law, as the usual presumptions such as strict construction of penalty statutes and liberal construction of social legislation seem to cancel one another. We have no need to indulge in those canons of interpretation, fortunately,as we, by looking to the statutory language, can see the General Assembly would not have made the penalty applicable only to installments had it intended it to apply to the other payments as well. Looking to the context of our statute, as we should, *Garrett* v. *Cline,* 257 Ark. 829, 520 S.W. 2d 281 (1975); *Arkansas State Highway Commission* v. *Mabry,* 229 Ark. 261, 315 S.W. 2d 900 (1958), as well as to its literal meaning, we would have to speculate on legislative intent to say the penalty applies to the medical and legal payments provisions.

We are aided somewhat in this conclusion by *Brooks* v. *Ark. Best Freight,* 247 Ark. 61, 444 S.W. 2d 246 (1969), where the Arkansas Supreme Court held that a lump sum payment of "compensation" pursuant to Ark. Stat. Ann. § 81-1319(k) (Supp. 1979), did not preclude the claimant from obtaining further medical payments from his employer as, at least in that case, the lump sum "compensation" did not include

medical payments. Similarly, we hold that the reference in § 81-1319 (f) to "installment, payable under the terms of the award" does not include medical and legal expenses.

### III. *Sufficiency of Evidence*

### A. *Controversion*

As we hold the penalty does not apply to medical payments and to the attorney's fee added to them, we need not address the appellants' point that the evidence does not support a finding they were controverted for the purpose of determining whether the penalty applies. Although the appellants have not raised the question whether the attorney's fee should have been added to the medical payment found to be delinquent, that question arises naturally, as they could not have been added absent a finding of controversion, and we would feel this opinion was incomplete without some discussion of the matter. Ark. Stat. Ann. § 81-1332 (Supp. 1979).

The appellants argue they have not controverted the medical bills despite the fact they were first approved by the full commission February 2, 1978, and had not been paid as of July 20, 1978. The appellants' contention is that, as the commission's order of February 2, 1978, remanded the case to the administrative law judge, its order was not final and not appealable at that time, and until such time as the order became final and appealable, the appellants were not required to pay.

The case was remanded to the administrative law judge solely for the purpose of determining the rehabilitation benefits question. The order was final with respect to the medical claim, and it should have been paid promptly. *Luker v. Reynolds Metals Co.*, 244 Ark. 1088, 428 S.W. 2d 45 (1968). The finding they were controverted is substantiated by this failure to pay. *Aluminium Co. of America v. Henning*, 260 Ark. 699, 543 S.W. 2d 480 (1976); *Pickens-Bond Construction Co. v. Case*, 266 Ark. 323 (1979).

### B. *15% Permanent Disability*

As contended by the appellants, the administrative law judge concluded in the opinion rendered July 20, 1978, after the case had beem remanded to him that the permanent disability to the body as a whole was 10%. The full commission

raised the figure to 15%. The issue before us is whether there is substantial evidence to support the commission's determination. In its opinion pursuant to which the 10% found by the administrative law judge was raised to 15%, the commission stated:

> Finally, even though the evidence of record indicates and the administrative law judge found that following completion of his six month program of rehabilitation here in question, the claimant's earning capacity is likely to substantially exceed his pre-injury earnings, we are of the opinion that because of the serious nature of the claimant's injury and the resulting permanent physical disability, that his future earning capacity is reduced somewhat and he is entitled to an increased permanent partial award of fifteen percent to the body as a whole, which is five percent permanent partial disability above our preliminary award of ten percent permanent partial disability to the body as a whole. Thus, the Administrative Law Judge's permanent partial disability award is modified accordingly.

It does not trouble us that this employee may earn more in his present job than he did before his injury. His fortunes could change at any time, and we must concern ourselves only with the extent to which his body has become disabled and his general prospects in the labor market have been affected. Although it is not particularly relevant at this point, the commission could have said it was modifying the administrative law judge's original finding of 33 ⅓% disability.

The commission had before it a history of an employee with a serious back injury who, before he hit upon the woodworking scheme, had been unable to secure any kind of lasting job, and who still cannot work long periods without abnormal tiring and whose anatomical functions are admittedly 10% less than normal. This evidence came from the claimant and his father. The owner of an employment agency

gave his opinion with respect to the employability of a person like the appellee.

We hold the evidence was sufficient to sustain the finding of 15% disability to the body as a whole.

## SUMMARY

1. The award of rehabilitation benefits of $1695.75 plus attorney's fees on that amount is reversed.

2. The award of a 20% penalty on medical and legal bills is reversed.

3. The award of $655.74, plus interest but without penalty, to the appellee's attorney, based on the controverted medical bills, is affirmed.

4. The award of 15% permanent partial disability plus attorney's fee on the controverted 5% is affirmed.

5. The case is remanded to the commission for final disposition in accordance with this opinion.

PENIX, JR., not participating.

HOWARD, J., dissents.

GEORGE HOWARD, JR., Judge, dissenting.

## I.

## REHABILITATION BENEFITS

The majority condemns the Commission's award of $1,-695.75 (25 ½ weeks of benefits) to the appellee as "maintenance benefits during his program of rehabilitation." The Commission, in accordance with the statute, found claimant's plan of rehabilitation reasonable in relation to his disabilities. The majority, in rejecting the Commission's holding, stated:

"We find no authority for this kind of calculation .. . We find no connection whatever between that section [Section 81-1313(b) providing for compensation for temporary partial disability] and the one providing for rehabilitation benefits. While the former contemplates reduced income, the latter deals with *costs* of rehabilitation. They are not the same.

"We hold the loss of income and temporary partial disability are irrelevant to rehabilitation maintenance benefits, thus, there was no substantial evidence to support the commission's award of $1,695.75 for such benefits."

Until fairly recently, Workers' Compensation Laws were concerned essentially with the prevention of industrial accidents, cure of injuries sustained by employees in the course of their employment and the payment of benefits to an injured employee in order to shield him and his family from destitution. Emphasis is now being placed on rehabilitation of employees who have sustained permanent disability in industrial accidents. Rehabilitation is essentially financial assistance, separate and apart from the routine disability benefits, to aid disabled employees in reducing limitations resulting from their disability and restoring them to the "fullest physical, mental, social, vocational and economic usefulness of which the individual is capable." *Rehabilitation Within The Workmen's Compensation Framework,* 19 Rutgers Law Review 401 (1965).

Arkansas's rehabilitation law, Ark. Stat. Ann. § 81-1310(f) is, perhaps, one of the most objective pieces of legislation designed to rehabilitate disabled employees. *See:* Provisions for Rehabilitation of Disabled Workers, 10 Am. Jur., Trials § 23, page 620. Section 1310(f) provides:

"An employee who is entitled to receive compensation benefits for permanent disability *shall be paid,* in addition to benefits otherwise provided for under this act, reasonable expenses of travel, *maintenance* and other necessary costs of a program of vocational rehabilitation for a period not to exceed sixty (60) weeks, if the commission finds that such program is reasonable in relation to the disabilities sustained by such employee."

(Emphasis supplied.)

It is clear from the plain meaning of this provision that the Commission is required, when it finds that a program of rehabilitation is reasonable in relation to the disabilities sustained by a claimant, to pay additional benefits to cover "reasonable expenses of travel, *maintenance* and other necessary costs" for a period not to exceed sixty weeks.

The Commission in determining the maintenance award for the claimant, which has been utterly and completely rejected by the majority, referred to, and consequently relief in part, on its recent case of *Gray* v. *Armour,* WCC File No. C611754. The Commission said:

> ". . . [T]hat maintenance, as referred to in Section 10(f) of the Act was, in effect a special period of temporary total disability during the period of time in which the claimant was engaged in his program of vocational rehabilitation. In this case, if we determine maintenance to equal a special period of "temporary partial disability' during the approximate six months vocational rehabilitation program, we find the claimant is entitled to 25½ weeks times $66.30, which equals a total maintenance benefit due the claimant of $1,695.75."

The majority is unalterably opposed to the award on the grounds that "We find no authority for this kind of calculation." But I submit that there is a wealth of persuasive authority to support the Commission's action separate and apart from the Commission's own case of *Gray* v. *Armour,* supra.

The Supreme Court of Minnesota in *Vierling* v. *Spencer Kellogg & Sons Inc.,* 245 N.W. 159, in approving the allowance of $20.00 per week for twenty-five weeks, by the Compensation Commission as a maintenance award to a disabled employee whose net income, during his retraining, was less than his income before his injury observed:

"Indeed, under the spirit and the construction of the Workers' Compensation Act, much must necessarily be left to the discretion of the Commission. It guides the state's policy in industrial injury. It has great responsibility and meets delicate problems. The exercise of discretion in the instant case was toward an employee who was entitled to compensation for retraining . . ."

*See also: Adams* v. *Nadave,* 245 N.W. 2d 277 (1976), where the Minnesota Supreme Court sustained the Minnesota Compensation Board in requiring an employer to pay up to 104 weeks of additional compensation during the actual period of retraining.

In *Symons* v. *National Electric Products, Inc.,* 414 Pa. 505, 200 S. 2d 871 (1964), the Supreme Court of Pennsylvania affirmed the holding of the Compensation Board in the suspension of weekly compensation benefits where the Board found that as a result of rehabilitation, the claimant was earning wages in excess of those earned at the time of his accident. A *fortiori,* the Arkansas Workers' Compensation Commission was justified in considering the differential in the claimant's income, before and after his injury, in calculating the maintenance award.

In *Conatser* v. *D. W. Hoskins Truck Service,* 210 Ark. 441, 194 S.W. 2d 680 (1946), the claimant was earning $37.50 per week at the time of his injury and later earned between $40.00 and $71.00 per week. The Commission suspended the compensation benefits payable to the claimant. The Arkansas Supreme Court in affirming the Commission said:

'The Workmen's Compensation Act does not call for general accident insurance; its purpose is to protect the worker or employee against reduced or lost earning power and when it is shown that the employee is earning higher wages in the same employment or otherwise after the injury than before he is not entitled to compensation under the act.'

In *Ruiz* v. *City of Albuquerque,* 577 P. 2d 424 (1978), the Court of Appeals of New Mexico stated that although the retraining provision of the Compensation Act provides that the courts must determine whether a disabled employee needs vocational rehabilitation services, this determination

does not rest within the exclusive discretion of the courts; that if there is sufficient evidence to warrant a finding of vocational rehabilitation, the award is mandatory.

In *Ranger Insurance Co.* v. *Speck,* 243 S.E. 2d 593, 145 Ga. App. 327, the Board of Workers' Compensation in awarding additional benefits for retraining did so under a Board rule which provides:

> ". . . Consistent with and in addition to medical and other treatment, rehabilitation may include, *but is not limited to:* Goods and services necessary in assessment, vocational evaluation, guidance and counseling, vocational planning and vocational training." (Emphasis supplied)

The Court of Appeals of Georgia in affirming the Board's action, said:

"The Board was authorized to find that provision for the claimant's education was necessary and practical to reduce his disability and *facilitate* his return to suitable employment." (Emphasis added)

The Arkansas Supreme Court in *Gordon* v. *Cummings,* 262 Ark. 737, 561 S.W. 2d 285 (1978), in articulating the unique posture administrative agencies have in matters as sensitive and delicate as the issue here, said:

> ". . . [A]dministrative agencies are better equipped than courts, by specialization, insight through experience and more flexible procedures to determine and analyze underlying legal issues . . . This recognition has been asserted, as perhaps the principal basis for the limited scope of judicial review of administrative action and the refusal of courts to substitute their judgment and discretion for that of the administrative agency."

The Commission found appellee's retraining program

acceptable and "reasonable in relation to the disabilities sustained." Consequently, the Commission was duty bound to allot "reasonable expenses of travel and *maintenance* and other necessary costs" in the form of additional benefits for a period not to exceed sixty weeks. The Commission, which administers and implements the State's policy in industrial injury, was presented with a fact question regarding not only the extent of the benefits appellee should receive, but what constituted "maintenance." Indeed, the Commission, in an effort to overcome the apathy that many disabled employees have shown to the idea of rehabilitation may have desired to motivate, and rightly so, towards rehabilitation.[1]

The majority has displaced the judgment of an agency that is better equipped than an appellate court to deal with an issue of the magnitude we have before us and substituted its own. The most charitable comment that can be conferred to the majority's posture is that the decision tends to encourage the injured employee to become sicker.

Finally, it is well settled that in reviewing a decision of the Workers' Compensation Commission, the appellate court must view the evidence in the light most favorable to support an award of the Commission and every legitimate inference must be drawn in favor of the employee.[2] *Simmons National Bank* v. *Brown,* 210 Ark. 311, 195 S.W. 2d 539 (1946).

The pivotal point in the majority's opinion in reversing the Commission is simply: "We find no authority for this kind of calculation." If this were the standard to be followed on controversies presenting new issues, the law would be

[1] One of the basic problems to a successful rehabilitation program is how to encourage injured employees to take part in the rehabilitation process. Many disabled employees who are worthy candidates for retraining and who could successfully improve the economic lot for themselves and their families and reduce employers' cost in compensation cases "won't leave the shelter of disability to seek a new haven of employment, fearing [they] will be left to the elements." *See: Rehabilitation Within the Workmen's Compensation Framework,* 19 Rutgers Law Review 401 (1965).

[2] Appellee, a 35 year old male, was residing at Rogers, Arkansas, at the time of his injury. He moved to Stack City, Missouri, in order to participate in his rehabilitative program. Upon completion of his training, it seems that he will be in a position to acquire the business, a wood shop.

deprived of the opportunity to develop and cope with the changes in an ever evolving society. Human progress and advancement would be minimal, if not retarded completely.

Moreover, the majority's opinion cries out for logic and consistency. Following the majority's criticism of the Commission's action for lack of an authoritative precedent, the majority makes this open admission regarding its own posture: "While we have no cases to which we can refer, the tenor of § 81-1310(f) contemplates rehabilitation at an institution or place away from the claimant's home, thus necessitating 'maintenance.'

It is settled law in this State that in considering Workers' Compensation provisions and definitions, the appellate court must construe and apply the provisions and terms liberally in favor of a claimant in the light of the beneficent and humane purposes of the act, resolving all doubtful cases in his favor. *Reynolds Metals Co.* v. *Brumley,* 226 Ark. 388, 290 S.W. 2d 211 (1956); *Arkansas Nat. Bk.* v. *Colbert,* 209 Ark. 1070, 193 S.W. 2d 806 (1946).

Our Supreme Court in further articulating this posture, made the following comment:

> ". . . Liberality of construction with reference to individual rights under our act is resorted to whenever obscurity of expression or inept phraseology appears and, given a restrictive construction, would have the effect of defeating praiseworthy purposes that undoubtedly actuated our lawmaking body."

*See: Massey* v. *Poteau Trucking Co.,* 221 Ark. 589, 254 S.W. 2d 959 (1953); *McGehee Hatchery Co.* v. *Gunter,* 237 Ark. 448, 373 S.W. 2d 401 (1963).

## II.

## PENALTIES

The majority has reversed the action of the Commission in awarding a 20% penalty on medical bills and attorney's fees. The

reason advanced: "We hold that the reference in § 81-1319(f) to 'installment, payable under the terms of the award' does not include medical and legal expenses." The majority further commented as follows:

". . . Looking to the context of our statute, as we should . . . as well as to its literal meaning, we would have to speculate on legislative intent to say the penalty applies to the medical and legal payments provisions."

Ark. Stat. Ann. § 81-1319(f) provides:

"FAILURE TO PAY AWARD. If any installment, payable under the terms of an award, is not paid within fifteen (15) days after it becomes due there shall be added to such unpaid installment an amount equal to twenty (20) per centum thereof, which shall be paid at the same time as, but in addition to, such installment unless review of the compensation order making such award is had as provided in section 25 [§ 81-1325]."

Ark. Stat. Ann. § 81-1302(i) provides:

" 'Compensation' means the money allowance payable to the employee or to his dependants, *and includes the allowance provided for in section 11 [§81-1311],* and funeral expense." (Emphasis supplied)

Ark. Stat. Ann. § 81-1311 provides:

"MEDICAL AND HOSPITAL SERVICES AND SUPPLIES. — The employer shall promptly provide for an injured employee such medical, surgical, hospital, and nursing services, and medicine, crutches, artificial limbs and other apparatus as may be reasonably necessary for the treatment of the injured received by the employee . . ."

The narrow construction placed upon § 81-1319(f), by the majority, demonstrates clearly that the majority fails to perceive that the pivotal word in | 81-1319(f) is not

"installment," but on the contrary is "award." "Award" is the central word in the statutory scheme.

Section 81-1302(i) states clearly that the allowance provided for in § 81-1311 — MEDICAL AND HOSPITAL SERVICES AND SUPPLIES — and funeral expenses are properly included within the definition of the term "compensation." Consequently, whenever any element of compensation, or, stated another way, an award is not paid within fifteen days after it becomes due, a penalty of 20% is added.

The weakness in the majority's posture in making the term "installment" the central word in the penal provision is demonstrated when an award of compensation is paid in one lump sum figure rather than in installments. In other words, if an award is made in one lump sum instead of in a series of payments, and the respondent fails to pay the lump sum within fifteen days after it becomes due, does this mean that the claimant is disentitled to the penalty because the award is not being paid in installments? Under the reasoning of the majority, the answer is in the affirmative.

Section 81-1319(k) provides:

"Whenever the Commission determines that it is for the best interest of the parties entitled to compensation, . . . the liability of the employer for compensation may be discharged by the payment of a lump sum . . ."[3]

In *Key* v. *Ark. P. & L. Co.,* 228 Ark. 585, 309 S.W. 2d 190 (1958), appellant argued that the words "compensation for disability" referred only to money paid to a claimant on account of the original injury or disability and not to compensation for medical or hospital expenditures. The Arkansas Supreme Court in rejecting this contention said:

"We think, however, that this contention must be rejected because of the definition given to the word

---

[3] *See: Southern Cotton Oil Co.* v. *Friar,* 247 Ark. 98, 444 S.W. 2d 556 (1969), where the Arkansas Supreme Court stated that while the lump sum payment is not an advantage to the claimant, it is frequently of benefit to all parties.

'compensation' by the Act itself . . . reads as follows:

> " 'Compensation' means the money allowance payable to an employee or to his dependents as provided for in this Act, and includes funeral benefits and allowances for hospital and medical expenses, provided therein;"

The Court concluded:

> "It seems to us that the above language is too plain to require or permit interpretation or amplification."

I concede that attorney fees are not included in the statutory definition of compensation, but nevertheless, the Commission was justified, because of the unnecessary delay on the part of the respondent, in affixing penalties on the attorney's fees.

In *Harmon* v. *Mid-South General Contractors, Inc.,* 218 So. 2d 390 (1969), the Court in approving the imposition of penalties said:

> "Statutory penalties and attorneys' fees were imposed where the evidence showed a lack of concern by the insurer of the injured workers' rights."

In *Brantley* v. *ADH Building Contractors, Inc.,* 215 So. 2d 297 (1968), the Supreme Court of Florida stated:

> "An obvious purpose of the penalty provision is to induce prompt payment of legitimate claims and to protect the claimant against unnecessary and unjustifiable delays."

In *Finn* v. *Delta Drilling Co.,* 121 So. 2d 340 (1960), the Louisiana Court of Appeal approved the action of increasing an attorney's fee from $1,640.00, by assessment of a stattory penalty for arbitrary nonpayment of compensation, to $2,000.00.

The prompt payment of medical bills and attorney's fees can, indeed, benefit the claimant in a variety of ways. For ex-

ample, prompt payment of legitimate bills can prevent embarrassment caused from the activity of collection agencies and the unnecessary time and expense involved in litigation; a claimant can avoid an unfavorable credit rating; an injured employee would be less apprehensive about visiting his physician or attorney for treatment or advice knowing that his bills have been promptly paid by a respondent.

Moreover, it is clear that medical bills are regarded as compensation and the physician, as here, who has rendered services and been deprived of the use and benefit of his fees should be afforded the penalty. The attorney who has rendered invaluable services in behalf of the claimant and has been required to wait an unreasonable length of time for his fees is equally entitled to the penalty. It seems clear from the record that the respondents became aware of existing medical bills during September, 1976, and it seems equally apparent that these bills were not paid as late as July, 1978.

For the reasons stated, I would affirm the action of the Commission.